SAMANTHA CHOE (SBN: 252002)
schoe@cov.com
ADDISON THOMPSON* (SBN: 330251)
athompson@cov.com
SYLVIA HUANG (SBN: 313358)
syhuang@cov.com
ANNIE SHI (SBN: 327381)
ashi@cov.com
**Covington & Burling LLP**
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

[Additional counsel listed on next page]

** C.D. California admission application forthcoming*

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

RICHARD HART, ERVIN LONGSTREET, ALDO HERNANDEZ, CHARLES GLUCK, AND GRAHAM WALDROP, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

STEPHANIE CLENDENIN, Director of California Department of State Hospitals, in her official capacity; JANINE WALLACE, Executive Director of Patton State Hospital, in her official capacity,

Defendants.

**Case No. 5:20-cv-1559**

**JOINT STATUS REPORT**

**Date: December 7, 2020**
**Time: TBD**
**Hon. Jesus G. Bernal**

JENNIFER STARK (SBN: 267062)
Jennifer.Stark@disabilityrightsca.org
AARON FISCHER (SBN: 247391)
Aaron.Fischer@disabilityrightsca.org
ANNE HADREAS (SBN: 253377)
Anne.Hadreas@disabilityrightsca.org
SARAH GREGORY (SBN: 303973)
Sarah.Gregory@disabilityrightsca.org
KIM PEDERSON (SBN: 234785)
Kim.Pederson@disabilityrightsca.org
**Disability Rights California**
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201

*Attorneys for Plaintiffs*

On August 5, 2020, Plaintiffs Richard Hart, Ervin Longstreet, Aldo Hernandez, Charles Gluck, and Graham Waldrop filed this putative class action seeking to represent all individuals who are currently confined, or who will be confined in the future, at Patton State Hospital ("DSH-Patton") during the COVID-19 pandemic and who are or might be at risk of becoming severely ill or dying from complications related to COVID-19 according to CDC guidelines (the "Proposed Class"). The Director of DSH, Stephanie Clendenin, and the Executive Director of DSH-Patton, Janine Wallace, are the defendants in this action.

Pursuant to the Court's November 18, 2020 Order (ECF No. 19), the parties submit the following Joint Status Report in advance of the status conference on December 7, 2020.

**Plaintiffs' Position:** At the time this action was filed, according to Defendants' published data and based on information received by Plaintiffs' counsel, at least 112 patients and 147 facility staff at DSH-Patton had tested positive for COVID-19 and at least two patients had died from complications after contracting the virus.[1]

Since the filing of the complaint, the parties have engaged in discussions as to possible resolution of this matter, with Plaintiffs working to secure necessary relief for the Proposed Class expeditiously. In addition to engaging in settlement discussions regarding appropriate class-wide relief, Plaintiffs have also sought relief for specific plaintiffs and prospective class members.

After conferring, Plaintiffs sent Defendants a settlement proposal; Plaintiffs also sent Defendants targeted data requests meant to facilitate discussions and provided a proposed protective order thereafter. Defendants have not agreed to or provided a response to the protective order, nor provided responses to Plaintiffs' data requests.

---

[1] The Department of State Hospitals provides the number of patient and staff who have tested positive for COVID-19, as well as information on the number of deaths, five times a week. *See* https://www.dsh.ca.gov/COVID-19/Patient_and_Staff_COVID-19_Tracking.html.

In early October, Plaintiffs learned from the named Plaintiffs and several other prospective class members that a new COVID-19 exposure had occurred in their housing units and that they were placed in quarantine. Plaintiffs' understanding is that a large number of prospective class members at DSH-Patton remain in quarantine to this day.

The Parties continue to engage in settlement discussions and have made substantial progress. However, to date, the Parties have been unable to reach a final settlement. In the meantime, the risk to Plaintiffs and the Proposed Class has increased significantly. As of November 30, 2020, the number of patients at DSH-Patton testing positive (221) has nearly doubled since the case was filed. According to DSH's published data, fifty-three (53) DSH-Patton patients have tested positive in the last two weeks alone. The percentage of the Patton patient population that has tested positive for COVID-19 in the last two weeks is more than four times greater than average percentage of individuals testing positive for COVID-19 in San Bernardino County.[2] Plaintiffs' counsel are informed that at least five additional patients have died at Patton from complications related to COVID-19 since Plaintiffs filed their complaint.

In light of the immediate threat to the health and well-being of Plaintiffs and members of the Proposed Class, Plaintiffs intend to file a Motion for Preliminary Injunction and a Motion for Certification of the Proposed Class, likely the week of December 14, absent the reaching of a settlement that can be presented to the Court for approval pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs may also seek expedited discovery on the matters at issue in this action.

**Defendants' Position:** Months before this action was brought, the Department of State Hospitals (DSH) engaged in effective actions to address the threat of COVID-19 infection to its patients and staff at each of its facilities, including DSH-Patton. Those

---

[2] Compare 53/1527 (total beds at Patton), or 3.5% of population, with 18,742 new cases in San Bernardino County over the same period, or .86% of the county population. *See* https://sbcph.maps.arcgis.com/apps/opsdashboard/index.html#/44bb35c804c44c8281da6d82ee602dff.

actions are ongoing, and will continue even as the vaccination of health care workers throughout California commences in the next two to three weeks.

At the start of the COVID-19 pandemic, DSH recognized that the demographics of its patient population, unlike the demographics of local communities, render many of its patients susceptible to COVID-19: nearly 25% of the patients in DSH hospitals are 60 or older and, regardless of age, individuals with serious mental illness typically have a 20% higher risk of morbidity and mortality than the general population.[3] DSH quickly and effectively acted upon that recognition by using its emergency authority, in conjunction with the Governor's Emergency Proclamation, to stop admissions from March 23, 2020 through May 22, 2020 in order to protect its patients and staff while consulting with public health and infection disease specialists from the California Department of Public Health (CDPH) and other state and local partners on the proper policies and practices for COVID-19 prevention in hospital settings. During this time, DSH reduced its census to establish isolation and quarantine space within its hospitals.

DSH executed an initial COVID-19 response plan across its system that followed guidance from the CDPH, the Centers for Disease Control and Prevention, and other state and local partners. Upon reopening to admissions, DSH implemented and continues to implement COVID-19 protocols that target the primary source of infection in its hospitals: staff and newly admitted patients. Such protocols including the screening of employees for COVID-19 (including surveillance testing of staff and patients on certain units and, when there is an exposure, on a widespread basis); quarantine areas for patients under investigation for exposure to COVID-19; social distancing protocols; a prohibition

---

[3] Plaintiffs' methodology for their statistical argument in footnote 2 is not clear. In asserting that DSH-Patton's positivity rate is greater than San Bernardino County's rate, Plaintiffs appear to cite a total case rate for the DSH population while looking at a positivity rate for the County at a particular point in time. DSH is not aware of the number of San Bernardino County residents that have received COVID-19 tests. As of November 30, 2020, DSH has performed 30,968 tests on a cumulative total of 6,137 patients across all five hospitals.

on admissions of COVID-19 positive patients (other than mentally disordered offenders) throughout the state; cohort admissions with a two-week quarantine and testing of newly-admitted patients; use of masks and handwashing; and a prohibition on in-person visitation unless for a court-ordered evaluation, end-of-life care, or other legal matter. Further, DSH continually assesses and takes necessary action to implement any new guidelines from CDPH, Centers for Disease Control and Prevention, and other leading experts, concerning the prevention of COVID-19. Such necessary action included the closure of DSH-Patton to admissions when a cluster of COVID-19 infections occurred.

Throughout the pandemic, DSH has fulfilled its obligation to provide mental health treatment to its patients and will continue to do so. DSH-Patton, which provides care to approximately 1,527 forensically and civilly committed patients within a secure area, continually reviews patients to assess whether they are clinically and forensically appropriate for discharge. However, the committing (state) courts must review any recommendations for the discharge of patients, such as those who are committed as not guilty by reason of insanity, and determine whether their placement in a community setting is appropriate and available. Further, even if a community setting is appropriate and available, such settings commonly involve congregate or shared living space.

The parties have engaged in multiple discussions of a potential settlement of this matter. DSH is optimistic that such settlement is possible, even as the apparently imminent distribution of a COVID-19 vaccine to health care workers may reduce the risk of COVID-19 within DSH facilities. DSH has been transparent in its response to COVID-19: DSH's policies and procedures as well as its COVID-19 statistics, by facility, are on its public website. (See DSH's public website https://dsh.ca.gov/COVID-19/ Protocols_and_Workflow.htm [policies] & https://dsh.ca.gov/COVID-19/Patient_and_Staff_COVID-19_Tracking.html [statistitics].) The parties have agreed upon the electronic platform for DSH-Patton's COVID-19 policies, which will be produced shortly. DSH is carefully analyzing the draft protective order to ensure patients' privileged information is safeguarded.

Because DSH has already engaged in proactive measures to safeguard DSH patients from COVID-19 infection and to determine the possibility of discharging any patients to community settings to hopefully reduce their individual risk of COVID-19 infection, DSH respectfully states that Plaintiffs need not seek any emergency court orders.

* * *

At the status conference, the parties will provide any updates regarding settlement discussions and will be prepared to discuss case management/scheduling matters.

Respectfully submitted,

Dated: December 2, 2020

By: /s/ Anne Hadreas

Anne Hadreas, Esq.
Disability Rights of California
Attorneys for Plaintiffs

Dated: December 2, 2020

By: /s/ Lisa Tillman

Lisa Tillman
Deputy Attorney General
Office of the Attorney General
Attorneys for Defendants
Stephanie Clendenin and Janine Wallace, sued in their official capacities