# Declaration of Elizabeth Jones

# Exhibit A

# RESUME

# ELIZABETH JONES

## EDUCATION

Bachelor of Arts, English, University of California at Santa Barbara, 1972.

Graduate work (20 credit hours) in Educational Psychology, Georgia State University, Atlanta, GA, 1976-77.

Master of Science, Labor Studies, University of Massachusetts, Amherst, Labor Relations and Research Center, 1982. Thesis focused on the Rhode Island Labor/Management agreement regarding the transfer of public employees from institutional to community-based programs.

Program for Senior Executives in the Commonwealth of Massachusetts, Kennedy School of Government, Cambridge, MA, 1983.

Web-based Certificate Course in Supported Employment, Virginia Commonwealth University, Rehabilitation Research and Training Center on Workplace Supports, Richmond, VA, 2002.

## WORK EXPERIENCE

**October 28, 2010 to present:**     **Independent Reviewer**
                                     **United States v. State of Georgia**

With agreement of the Parties, appointed by the United States District Court to review the State of Georgia's implementation of a Settlement Agreement requiring the development of integrated community-based services and supports as alternatives to institutionalization for individuals with developmental disabilities and/or mental illness.

**February 10, 2004 to January 10, 2017:**    **Court Monitor**
                                              **Washington, DC**

Appointed as Court Monitor in Federal Court class action litigation, Evans v. Bowser, brought to compel the development of community-based, individualized services/supports for former residents of the District-operated Forest Haven institution (now closed) for children and adults with intellectual and/or developmental disabilities. Responsibilities included oversight of all monitoring activities, management of the Court Monitoring Office, reporting to the Federal Court, and working with the Parties to identify issues/concerns affecting compliance with longstanding court orders and agreements.

**November 5, 2003 to December 31, 2004:**	Receiver
	Riverview Psychiatric Center/Augusta
	Mental Health Institute
	Augusta, ME

Appointed by the Maine Superior Court in the Bates v. Harvey case, class action litigation brought in 1989 to ensure the provision of mental health treatment to current and former clients of the Augusta Mental Health Institute. Responsibilities included oversight of all Hospital management and operations, preparation and implementation of a work plan that will lead to compliance with the Consent Decree, and monthly reporting to the Court. The Receivership was vacated by the Law Court of Maine in December 2004.

**August 1, 2001 to February 10, 2004:**	Senior Planner
	District of Columbia
	Department of Mental Health
	Washington, DC

Within the newly formed Department of Mental Health, responsible for planning systemic initiatives that improve the quality of care/treatment for individuals with serious mental illness. Major responsibility for the Department's evidence-based supported employment initiative, including the Ticket to Work; development of core curriculum for employment specialists; implementation of the Johnson & Johnson-Dartmouth Community Mental Health Program grant award; data analysis of existing employment services; restructuring employment models no longer considered consistent with best practices; and interagency collaboration to expand employment options for adults and youth with serious mental illness/emotional disturbance. Additionally, exercised major responsibility for interagency efforts to improve services/supports for those clients with a dual diagnosis of mental illness/intellectual disability.

**June 1, 2000 to August 1, 2001:**	Chief Operating Officer
	District of Columbia
	Commission on Mental Health Services
	Washington, DC

**April 1, 2000 to June 1, 2000:**	Acting Chief Operating Officer

Under the direction of the Transitional Receiver, responsible for the day to day operations of the Commission including supervision of all administrative and programmatic functions; working with other government agencies and providers of services/supports to the Commission and its clients; collaborating with consumer groups, advocates, family groups and other interested parties to strengthen the mental health system's responsiveness and effectiveness in meeting its mandates; participating in the design and implementation of systemic reform initiatives; overseeing the investigation and resolution of concerns impeding the delivery of services/supports of the highest possible quality.

2

| | |
|---|---|
| **February 1998 to April 2000:** | **Hospital Director**<br>**St. Elizabeths Hospital**<br>**Washington, DC** |

Overall management responsibility for the Acute Care and Continuing Care programs of a public psychiatric hospital then under Federal Court receivership pursuant to orders in the <u>Dixon</u> case, a longstanding class action lawsuit mandating the development of a comprehensive community based mental health system.

Responsibilities included direction and oversight of the provision of active treatment to approximately 375 clients; identification of appropriate community services for individuals no longer requiring stabilization in an inpatient setting; management of personnel and budget; work with advocates, families, legal representatives, community providers, community advocacy groups and public officials. As a member of the senior executive staff, responsible for working with the Receiver and colleagues to design, implement and evaluate strategies for systemic reform. Also responsible for the overall management of the CarePoint Project, an initiative designed to substantially reform and improve the provision of individualized services and supports.

| | |
|---|---|
| **June 1990 to February 1998:** | **Executive Director**<br>**Disability Rights Maryland**<br>**Baltimore, MD.** |

Disability Rights Maryland, formerly known as the Maryland Disability Law Center, is a public interest law firm funded mainly through federal and state grants and contracts. Pursuant to federal law, it has been designated since 1977 as the Protection and Advocacy System for the State of Maryland. Reporting to an independent Board of Directors, responsibilities as Executive Director included supervision of thirty-six staff, including thirteen attorneys and nine paralegals, and management of a two million dollar budget. Responsibilities also included planning, program implementation, liaison with advocacy groups and state agencies, public relations and playing a key role in the disability and public interest community.

| | |
|---|---|
| **July 1986 to June 1990:** | **Coordinator**<br>**Dixon Implementation Monitoring Committee**<br>**Washington, D.C.** |

Coordinator for the Dixon Committee, a monitoring group established in 1980 by Federal District Judge Aubrey Robinson in the <u>Dixon</u> lawsuit. The Committee was mandated to receive and analyze defendant's reports and factual investigations; screen and investigate complaints; oversee and report on the progress of the implementation of the Court's decrees. Responsibilities as Coordinator included advising plaintiffs' attorneys at the Mental Health Law Project (now the Bazelon Center for Mental Health Law) and at Covington and Burling on programmatic issues; serving as a liaison between the

3

Committee and its attorneys as necessary; community organizing; conducting site visits; designing public education strategies; extensive public speaking; working with the media; fundraising; and developing and managing student internships with local colleges and universities.

**December 1983 to July 1986:**          **District Manager**
                                                      **Department of Mental Health**
                                                      **Northampton, Massachusetts**

Chief Executive Officer for five mental health and intellectual disability service areas (total population 800,000). Exercised responsibility for an approximately sixty million dollar budget. Overall responsibility for the implementation of the <u>Brewster</u> decree, a landmark Federal Court order governing the use of Northampton State Hospital and the development of community programs for people with mental illness. Responsibility for inpatient services at Northampton State Hospital until reorganization occurred. Extensive experience in working with organized labor, private provider agencies, local and state government officials, consumer and family advocates, the media and a wide spectrum of community groups interested in the mental health system and the implementation of necessary systemic reforms.

Management responsibilities also included planning; program development; program implementation; supervision of senior staff; community relations; dispute settlement; interagency coordination; budget preparation; oversight and monitoring; designation as appointing authority for all area-based state employees.

**September 1983 to December 1983:**     **Director of Planning, Development and Compliance**
                                                        **Belchertown State School**
                                                        **Belchertown, Massachusetts**

Oversaw Belchertown State School's compliance with federal, state and court mandates; coordinated all responses and compliance plans for the court under the <u>Ricci v. Greenblatt</u> decree and for federal Medicaid. Worked with local and state officials and agencies on issues related to the present and future uses of state school property; developed long-range initiatives for the use of state school resources; designed and implemented tools, methods and techniques for monitoring service delivery at the State School; designed and implemented training in quality assurance for staff at all levels of the organization.

4

| | |
|---|---|
| **August 1982 to September 1983:** | **Acting Superintendent**<br>**Belchertown State School**<br>**Belchertown, Massachusetts** |

Overall management responsibility for the direction of a large residential facility for individuals with an intellectual disability.  Responsibilities included the implementation of a consent decree resulting from a federal class action lawsuit, <u>Ricci v. Greenblatt.</u> Management functions also included personnel authority over 1,400 staff; supervision of senior staff; oversight of budget preparation and spending for direct resources of over twenty eight million dollars in state and federal funds; labor relations; community relations; participation in the planning and implementation of community programs for clients with an intellectual disability in District I; and planning on statewide issues. Initiated the development of self-advocacy programs for the residents of Belchertown State School.

Worked as a primary member of the regional senior management team to plan and ensure the implementation of all necessary reforms in the provision of mental health and intellectual disability services to residents of Western Massachusetts and their families. Worked with senior management colleagues to design, coordinate and evaluate policies and program standards for all components of the systems in Western Massachusetts as mandated by two Federal Court ordered consent decrees.

| | |
|---|---|
| **October 1977 to August 1982:** | **Director of Employee Services**<br>**Belchertown State School**<br>**Belchertown, Massachusetts** |

Responsible for the direct management and administration of all personnel, staff development and employee assistance programs. Responsible for labor/management activities including participation in state and national initiatives. Regional responsibilities included the development and support of staff development offices and programs. Co-investigator for a federal grant on training and manpower development from 1979-80.

Worked as a member of the regional management team responsible for the design, coordination and evaluation of staff development strategies for mental health and intellectual disability programs in Western Massachusetts as stipulated in two court ordered consent decrees.

| | |
|---|---|
| **April 1977 to October 1977:** | **Community Residential Services**<br>   **Consultant**<br>**State of Georgia**<br>**Division on Mental Health and Mental**<br>   **Retardation**<br>**Atlanta, Georgia** |

Responsible for the statewide planning and monitoring of community residential services for people with an intellectual disability, including those with a dual diagnosis of mental

5

illness, particularly those in transition from institutional settings. Designed specific plans and processes for the placement of five hundred clients from state institutions throughout Georgia.

| | |
|---|---|
| **July 1976 to April 1977:** | **Advocacy Specialist**<br>**Advocacy Planning Project**<br>**Atlanta Association for Retarded Citizens**<br>**Atlanta, Georgia** |

Responsible for the statewide design and implementation of a protection and advocacy system for people with developmental disabilities as specified in Public Law 94-103. Activities included the planning and implementation of public hearings throughout Georgia.

| | |
|---|---|
| **July 1975 to July 1976:** | **Community Services Consultant**<br>**State of Georgia**<br>**Division of Mental Health and Mental Retardation**<br>**Atlanta, Georgia** |

Supervision of community services workers monitoring the placement of people with an intellectual disability who had returned to the Atlanta area from state institutions.

| | |
|---|---|
| **April 1974 to July 1975:** | **Cottage Life Supervisor**<br>**Georgia Mental Health Institute**<br>**Atlanta, Georgia** |

Supervisor of staff working in a transitional living unit for adults with an intellectual disability, including those with a dual diagnosis of mental illness, previously institutionalized in state facilities.

| | |
|---|---|
| **November 1973 to April 1974:** | **Assistant Teacher**<br>**Georgia Center for the Multihandicapped**<br>**Dekalb County Schools**<br>**Atlanta, Georgia** |

Assisted in the evaluation of school-aged children with multiple disabilities, including deafness and/or blindness. Assisted in the coordination of community-based services for these children in order to support their individual and family needs.

| | |
|---|---|
| **January 1971 to October 1971:** | **Editorial Assistant** <br> **Department of Anthropology** <br> **University of Turin** <br> **Turin, Italy** |

Editing of manuscripts on primate classification. Editing and preparation of journal articles on genetics for the Academic Press, London. Teaching of English to graduate students at the University of Turin.

| | |
|---|---|
| **January 1969 to June 1970:** | **Board of Education** <br> **Dayton, Ohio** |

Teacher of remedial class for seventh and eighth grade inner city children bused to suburban school to meet desegregation mandates.

## CURRENT CONSULTATION

**New York:** Expert consultant for the Plaintiffs in <u>Bagley et al v. New York State Department of Health et al</u>, Case 15-cv-4845 (FB) (CLP), regarding the implementation and administration of New York State's Nursing Home Transition and Diversion Waiver Program (February 2020-present).

Expert consultant for the Plaintiffs in <u>Disability Advocates, Inc. v. Paterson</u>, later refiled as <u>O'Toole v. Cuomo,</u> class action litigation brought on behalf of the residents of adult board and care homes in New York (June 2004-present).

**Connecticut:** Expert consultant to Connecticut Legal Rights Project, Inc. in the matter of <u>Wilkes v. Lamont</u>, Case 3:20-cv-00594-JCH, regarding individuals at risk of COVID-19 in two state hospitals (May 2020-present).

**Virginia**: Expert consultant to the Independent Reviewer for the Settlement Agreement in <u>United States v. Commonwealth of Virginia</u> (July 2012-present).

**North Carolina:** Expert consultant to the Independent Reviewer for the Settlement Agreement in <u>United States v. North Carolina</u> (March 2015-present).

**California**: Expert consultant in the matter of <u>Disability Rights California v. County of Alameda; Alameda County Behavioral Health Care Services; and Alameda Health System</u>, Case 5:20-cv-05256, regarding segregation of adults with serious mental illness in Alameda County psychiatric and forensic institutions (August 2019-present).

**PAST CONSULTATION**

**California:** Expert consultant for the Plaintiffs in <u>Coleman v. Newsom</u>, Case No. 2:90-CV-00520-KJM-DB, regarding individuals at risk of COVID-19 in state prisons (September 2020).

**District of Columbia:**  Expert consultant to the Plaintiffs in <u>Costa v. Bazron</u>, Case No. 19-3185 (D.D.C. April 18, 2020), regarding Plaintiffs' Motion seeking an order requiring immediate action to protect patients at risk of COVID-19 in St. Elizabeths Hospital (April 2020).

Expert consultant for the Department of Justice, Plaintiff-Intervenor in <u>Evans v. Bowser</u>, a class action lawsuit filed in Federal Court on behalf of individuals with a developmental disability institutionalized at Forest Haven (February 1995-May 1995).

**Utah:** Expert consultant for the Plaintiffs in <u>Christensen et al v. Miner et al</u>, class action litigation brought on behalf of the residents of private institutions in Utah (September 2016-November 2019).

**Oregon:** Expert consultant to the Independent Reviewer regarding compliance with the provisions of the Oregon Performance Plan (May-June 2018).

**Puerto Rico:** Assistant to the Court Monitor (January 2016). Under the supervision of the Court Monitor, assisted in the review of an outpatient mental health center previously under Federal Court supervision in <u>Navarro v. Governor</u>.

**Maine:** Consultant to the Court Master (August 2010 to 2015). Appointed Court Monitor by the Superior Court in order to document the funding for the adult mental health system and describe the impact of that funding on the Defendant's ability to achieve substantial compliance in <u>Bates v. Harvey</u> (August 2008-January 2010).

Consultant to the State Department of Health and Human Services regarding mental health services related to achieving compliance in the <u>Bates v. Harvey</u> case (February-June 2006).

**Illinois:**  Expert consultant to the Court Monitor in <u>Williams v. Quinn</u>, class action case brought on behalf of individuals with mental illness who are confined to intermediate care nursing homes (October-December 2014). Expert witness to the Plaintiffs in <u>Williams v. Quinn</u> (February 2007-September 2010).

**Texas:**  Member of the Monitoring Team reviewing compliance with the Department of Justice Settlement Agreement for Lubbock State Supported Living Center and Austin State Supported Living Center. Designated with expertise in protection from harm (November 2009-January 2013).

Expert consultant for the Plaintiffs in <u>Lelsz v. Kavanagh</u>, a class action lawsuit regarding the rights of individuals with an intellectual disability residing in institutions funded by the State of Texas (1991-1992).

**Connecticut:** Expert witness for the Plaintiffs in <u>Messier v. Southbury Training School</u> (September 2009-February 2010).

**Virginia:** Expert consultant to the Virginia Office of Protection and Advocacy regarding the death investigation of an individual confined to a state psychiatric hospital (November 2007-October 2008).

**New York:** Expert consultant to Touro Law Center in <u>Rothenberg v. State</u>, a case brought on behalf of an individual confined to a state psychiatric hospital (July 2004); <u>Monaco v. Carpinelli</u> regarding involuntary commitment evaluations (August 2006); and <u>Sparks v. Seltzer</u> regarding visitor restrictions on an inpatient ward (December 2006).

**Paraguay:** Expert consultant to Mental Disability Rights International on the reform of the mental health system in Paraguay. Action was taken pursuant to the Inter-American Commission on Human Rights' decision to grant precautionary measures regarding the Neuro-Psychiatric Hospital in Asuncion (2005-2010).

**Kosovo**:  Expert consultant to Mental Disability Rights International for the development of a plan to assist the government of Kosovo in replacing the Shtime Institution with community based services/supports (November 2006-2007).

**Bulgaria:**  In collaboration with Amnesty International and Mental Disability Rights International, expert consultant for the Bulgaria Helsinki Committee. Visited eight institutions for children and adults with an intellectual disability and/or mental illness in order to provide recommendations for systemic reform.  Guest presenter at the Bulgarian Psychiatric Association's annual conference (October 2001-2002).

**Massachusetts:**  Expert witness for the plaintiffs in <u>Rolland v. Celluci</u>. Case involved the right to habilitation for individuals with an intellectual disability/developmental disabilities confined to nursing homes (1999-2004).

**Ireland:**  Guest lecturer to students/faculty at the Center for the Study of Developmental Disabilities, University College of Dublin, on contemporary issues in the field of intellectual disability 1999-2003).

**Pennsylvania:**  Consultant for the Special Master in <u>Halderman v. Pennhurst</u> (May 1996-January 1997).

**Romania:**  Consultant for Mental Disability Rights International on the development of services/supports for people with an intellectual disability (November 1995-1997).

**Massachusetts:**  Expert consultant for the Defendants regarding the implementation of the consent decrees regarding the state schools (1992).

9

**North Dakota:** Consultant for the Protection and Advocacy System regarding systemic issues affecting individuals with mental illness institutionalized in state psychiatric facilities (1992).

**Iowa:** Expert consultant for the Plaintiffs in O'Connor v. Branstad, a class action lawsuit on behalf of individuals with an intellectual disability residing in two state schools (May 1989 to 1994).

**New Mexico:** Expert witness in Robbins et al. v. Budke, a class action case concerning access of the Protection and Advocacy System to a state hospital (December 1989).

**Michigan:** Expert witness in Kope v. Watkins, a class action lawsuit on behalf of individuals with an intellectual disability living in nursing homes (January 1989-1993).

**Louisiana:** Consultant to the Special Master in the Gary W. case in the New Orleans region (Spring 1986).

**England and Wales:** Consultant on the development of intellectual disability services for the Sheffield Health Authority, Manchester Health Authority and NINROD of Cardiff, Wales (October 1984).

**PRIOR WORK IN OTHER LITIGATION**

In Monaco v. Carpinelli, Sparks v. Seltzer, and Williams v. Quinn, I was deposed.

In Rolland v. Celluci, DAI v. Paterson and Messier v. Southbury Training School, I provided deposition and trial testimony. In Williams v. Quinn, O'Toole v. Cuomo and Christensen et al v. Miner et al, I testified at the Fairness Hearings.

In Robbins et al. v. Budke, I provided trial testimony.

Updated December 10, 2020