SAMANTHA CHOE (SBN: 252002)
schoe@cov.com
ADDISON THOMPSON* (SBN: 330251)
athompson@cov.com
SYLVIA HUANG (SBN: 313358)
syhuang@cov.com
ANNIE SHI (SBN: 327381)
Covington & Burling LLP
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

JENNIFER STARK (SBN: 267062)
Jennifer.Stark@disabilityrightsca.org
AARON FISCHER (SBN: 24739)
Aaron.Fischer@disabilityrightsca.org
ANNE HADREAS (SBN: 253377)
Anne.Hadreas@disabilityrightsca.org
SARAH GREGORY (SBN: 303973)
Sarah.Gregory@disabilityrightsca.org
KIM PEDERSON (SBN: 234785)
Kim.Pederson@disabilityrightsca.org
Disability Rights California
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201

*Attorneys for Plaintiffs*

\* C.D. California admission application forthcoming

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| RICHARD HART et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHANIE CLENDENIN, Director of California Department of State Hospitals, in her official capacity et al.,<br><br>Defendants. | Case No. 5:20-cv-1559-JGB-SHK<br><br>**DECLARATION OF KIM PEDERSON**<br><br>Date:  December 21, 2020<br>Time:  9:00 a.m.<br>Judge:  Hon. Jesus G. Bernal<br>Courtroom:  7D<br><br>Compl. filed:  08/05/2020 |

**DECLARATION OF KIM PEDERSON**

I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

1. I am an attorney admitted to practice in the State of California and the Central District of California. I am a Senior Attorney at Disability Rights California and counsel of record for plaintiffs and the proposed class in this action.

2. I submit this declaration for the purpose of setting forth the reasons for Plaintiffs' counsel's inability to comply with Local Rule 5-4.3.4(a)(3), which requires hand-signed signatures for non-CM/ECF filers. Given the circumstances related to the COVID-19 pandemic and public health orders, Plaintiffs' counsel respectfully request an exception to Local Rule 5-4.3.4(a)(3), and will file the hand-signed declaration upon receipt, consistent with any further direction from the Court.

3. As outlined below, despite extensive and good faith efforts to obtain hand-signed signatures in accordance with the Local Rules, plaintiffs' counsel has been unable to do so for the declarations of the following DSH-Patton patients: Tulio Grajeda, Paul Quintana, Kenneth Lowery, Lawrence Heine, Luke Freund, Ricardo Tapia, and James Moore.

4. Over the course of the last several weeks, my co-counsel and I have been in regular – in many cases, daily – contact by telephone with DSH-Patton patients who are plaintiffs or putative class members in this action. They have provided detailed information about their experiences as relevant to this matter, which we have carefully reduced to writing in draft declarations. In all cases, we have verbally reviewed the content of the declaration with each respective plaintiff or putative class member, to ensure that the facts set forth in the draft declaration we subsequently sent to each of them *via* mail was accurate.

5. We have received seven hand-signed declarations from DSH-Patton patients. However, for the individuals noted above, Plaintiffs' counsel has been unable to obtain the hand-signed copies of the declarations in time to file their urgent motions for class

certification and injunctive relief. Since the COVID-19 pandemic arrived in California, we have had significant difficulty communicating and corresponding timely with institutionalized clients, including in DSH-Patton and other DSH hospitals.

6. DSH-Patton is currently in the midst of a staggering surge of COVID-19 infections among the patient population, as described in the pleadings filed herewith. This development has only made it harder to communicate and correspond timely with our clients confined at the hospital.

7. This week, I learned that three of the named plaintiffs in this lawsuit are amongst the DSH-Patton patients who have contracted COVID-19 during the last fourteen days: Ervin Longstreet, Aldo Hernandez, and Graham Waldrop.

8. In addition, through my telephone conversations with patients at DSH-Patton, I have learned that many other DSH-Patton patients who have recently contracted COVID-19 have risk factors for severe illness or death according to CDC guidelines, and are therefore members of the proposed class.

9. Given the magnitude of the current COVID-19 outbreak at DSH-Patton, it is imperative that plaintiffs' counsel not delay the filing of motions for class certification and emergency injunctive relief to protect the health and safety of DSH-Patton patients who are at risk of severe illness or death from COVID-19.

10. Due to the COVID-19 pandemic, and in particular at the mandate regional stay-at-home orders in recent days, members of the Plaintiffs' counsel team have been unable to travel to DSH-Patton to interview patients in person or to otherwise directly obtain their handwritten signatures on declarations.

11. Rather, I have interviewed DSH-Patton patients by phone, drafted declarations based on these interviews, and reviewed the contents with the declarants over the phone before mailing hard copies for the declarants to sign and return to me in postage-paid return envelopes.

12. From my experience corresponding with DSH-Patton patients by mail in recent months, I have seen that it generally takes at least two weeks between my office

mailing out the hard copies of documents a client to sign and our receipt of the signed documents. In the past, my office has tried to get mail to DSH-Patton patients faster by sending documents via overnight FedEx delivery. However, I learned that, due to the time it takes for the mail room at DSH-Patton to process items received via overnight FedEx, the documents do not reach the patients any faster than if my office sends them *via* first class mail.

13. In light of COVID-19 regional stay-at-home orders and related COVID-19 correspondence delays, the declarants discussed below have requested and authorized that Plaintiffs' counsel enter an e-signature on their behalf for their respective declarations that were sent to them and that they confirmed to be true and accurate.

### Declaration of Tulio Grajeda

14. On December 2, 2020 via first class mail, my office mailed Mr. Grajeda a hard copy of the Declaration of Tulio Grajeda.

15. On December 9, 2020, I spoke to Mr. Grajeda on the telephone. He told me that he received the copy of his declaration in the previous day's mail. In addition, he told me that he read it, signed it, and placed it in DSH-Patton's outgoing mail on December 9.

16. Mr. Grajeda verified that the contents of the Declaration of Tulio Grajeda were true and correct. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Grajeda authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

17. As of the date I make this declaration, I have not received the signed copy of the Declaration of Tulio Grajeda.

18. Also during our conversation on December 9, Mr. Grajeda informed me that more than half of the patients on the double unit where he resides (Units 26 and 27) had tested positive for COVID-19 during the past few days and were transferred off of the unit into isolation. More specifically, he told me that there were only six patients left on

Unit 26, meaning that 44 out of the 50 patients residing there had contracted COVID-19 and were moved to isolation.

### Declaration of Paul Quintana

19. On December 2, 2020 via first class mail, my office mailed Mr. Quintana a hard copy of the Declaration of Paul Quintana.

20. On December 9, 2020, I spoke to Mr. Quintana on the telephone. He told me that he received the copy of his declaration in the previous day's mail. We reviewed the contents of the declaration in full together. I read the document to him over the phone and he read along on his copy. He verified the accuracy of all information contained in the declaration and told me he would sign it and return it in the postage-paid envelope. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Quintana authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

21. As of the date I make this declaration, I have not received the signed copy of the Declaration of Paul Quintana.

### Declaration of Kenneth Lowery

22. On December 2, 2020 via first class mail, my office mailed Mr. Lowery a hard copy of the Declaration of Kenneth Lowery.

23. On December 9, 2020, I spoke to Mr. Lowery on the telephone. He told me that he received the copy of his declaration in the previous day's mail. In addition, he told me that he read it, signed it, and placed it in DSH-Patton's outgoing mail on December 9.

24. He verified that the contents of the declaration were true and correct. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Lowery authorized me to e-sign his declaration on his behalf for the purpose of a motion for emergency relief if I did not receive his hand-signed signature in time for a filing.

25. As of the date I make this declaration, I have not received the signed copy of the Declaration of Kenneth Lowery.

### Declaration of Lawrence Heine

26. On December 2, 2020 via first class mail, my office mailed Mr. Heine a hard copy of the Declaration of Lawrence Heine.

27. On December 10, 2020, I spoke to Mr. Heine on the telephone. He told me that Unit 22, where he lives, had been on "isolation quarantine" for about 36 hours due two patients there testing positive for COVID-19. At the time that I talked with him, Mr. Heine explained to me that "isolation quarantine" meant that he and all of the other patients on the unit were confined to their bedrooms. He told me that taking my phone call was the first time he had been allowed out of his room, aside from using the bathroom, since the "isolation quarantine" began.

28. Mr. Heine told me that DSH-Patton staff brought his mail to him in his room in the evening of December 9. He told me that this is when he received his copy of his declaration, which he had not yet signed.

29. We reviewed the contents of the declaration in full together. I read the document to him over the phone and he read along on his copy. He verified the accuracy of all information contained in the declaration and told me he would sign it and return it in the postage-paid envelope. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Heine authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

30. As of the date I make this declaration, I have not received the signed copy of the Declaration of Lawrence Heine.

### Declaration of Luke Freund

31. On December 2, 2020 via first class mail, my office mailed Mr. Freund a hard copy of the Declaration of Luke Freund.

32. On December 10, 2020, I spoke to Mr. Freund on the telephone. Along with Mr. Heine, Mr. Freund is housed on Unit 22. Mr. Freund told me that they have been on "isolation quarantine" and unable to come out of their rooms for at least 36 hours.

33. Mr. Freund told me that he received the copy of his declaration in the previous day's mail. In addition, he told me that he read it, signed it, and placed it in DSH-Patton's outgoing mail on December 9.

34. He verified that the contents of his declaration were true and correct. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Freund authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

35. As of the date I make this declaration, I have not received the signed copy of the Declaration of Luke Freund.

### Declaration of Ricardo Tapia

36. On December 2, 2020 via first class mail, my office mailed Mr. Tapia a hard copy of the Declaration of Ricardo Tapia.

37. On December 11, 2020, I spoke to Mr. Tapia on the telephone. He told me that he tested positive for COVID-19 and was moved to an isolation unit in the "O" Building at DSH-Patton on the afternoon of December 7, 2020. He told me that other patients who are in isolation with him in the "O" Building are really sick. He told me that, based on what he sees with other patients being so sick from COVID-19, he is very afraid of getting sicker if he contracts the virus again in the future.

38. Mr. Tapia told me that he received the copy of his declaration the day before we spoke. He told me that he read it, signed, it, and gave it to his social worker to put in the outgoing mail.

39. He verified that the contents of the Declaration of Ricardo Tapia were true and correct. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Tapia

authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

40. As of the date I make this declaration, I have not received the signed copy of the Declaration of Ricardo Tapia.

### Declaration of James Moore

41. On December 2, 2020 via first class mail, my office mailed Mr. Moore a hard copy of the Declaration of James Moore.

42. On December 11, 2020, I spoke to Mr. Moore on the telephone. He told me that he tested positive for COVID-19 and was moved to an isolation unit in the "O" Building at DSH-Patton on the afternoon of December 7, 2020. Mr. Moore told me that COVID-19 has made him very sick. He has been coughing up blood, can barely breathe, and has had a fever for five days. He told me that, just before I spoke to him, DSH-Patton put him on an oxygen tank. Mr. Moore told me that he is very scared.

43. Mr. Moore told me that, two days before we talked, he received the copy of his declaration that our office mailed to him. He told me that he read it, signed, it, and gave it to the shift lead in the "O" Building to put in the outgoing mail.

44. He verified that the contents of his declaration were true and correct. He asked that it be submitted to the Court as part of any motion for emergency relief filed on behalf of him and other putative class members. Mr. Moore authorized me to e-sign his declaration on his behalf if I did not receive his hand-signed signature in time for the filing of Plaintiffs' motions.

45. Later in the day on December 11, 2020, I received a telephone message from Mr. Moore's mother, who informed me that DSH-Patton transferred Mr. Moore to a local hospital because of the severity of his symptoms.

46. As of the date I make this declaration, I have not received the signed copy of the Declaration of James Moore.

//
//

1  I declare under penalty of perjury of the laws of the State of California and the United
2  States that the foregoing is true and correct.  Executed on the 12th day of December,
3  2020 in Los Gatos, California.

                                            /s/ *Kim Pederson*
                                            Kim Pederson