# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| RICHARD HART et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STEPHANIE CLENDENIN, Director of California Department of State Hospitals, in her official capacity et al.,<br><br>Defendants. | Case No. 5:20-cv-1559-JGB-SHK<br><br>**[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE, ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Central District Local Rule 65, Plaintiffs Ervin Longstreet, Aldo Hernandez, Charles Gluck, and Graham Waldrop ("Plaintiffs"), individually and on behalf of all others similarly situated, filed, with notice, an *ex parte* application for a Temporary Restraining Order and in the Alternative Preliminary Injunction. Plaintiffs file concurrently an *ex parte* application for provisional class certification.

Having considered the application, the memorandum of points and authorities, declarations, and evidence in support thereof, and all other documents and pleadings filed in this action, the Court hereby GRANTS Plaintiffs' application for a temporary restraining order and ORDERS Defendants to show cause why a preliminary injunction should not issue.

The Court finds that Plaintiffs have demonstrated: (1) the likelihood of immediate and irreparable harm to the lives and well-being of Class members, DSH-Patton State Hospital patients at high-risk for severe COVID-19 illness, based on Defendants' failure to protect them from the spread of COVID-19; (2) the law and facts clearly favor

Plaintiffs, and they are likely to succeed on the merits; (3) on balance, the equities tip in Plaintiffs' favor; and (4) the injunctive relief requested here is in the public interest.

## TEMPORARY RESTRAINING ORDER

Accordingly, subject to further hearing on the Order to Show Cause re Preliminary Injunction, the Court hereby ORDERS:

**A. Prevention and Infection Control Measures Against COVID-19**

1. Defendants shall, with the oversight of a court-appointed expert (discussed below), implement a plan to address deficiencies in infection control at DSH-Patton, including with respect to:

    a. Provision of adequate social distancing, through the transfer and/or discharge of DSH-Patton patients as necessary to reduce the population at DSH-Patton to no more than 50% normal capacity in each individual housing unit. This population reduction shall be accomplished in its entirety **no later than thirty (30) days** after entry of this Order;

    b. Expert assessment and remediation of ventilation deficiencies to ensure adequate air exchange in patient living areas;

    c. Appropriate quarantine and medical isolation protocols, including the reduction of individual quarantine and medical isolation units to no more than five patients;

    d. Provision of adequate patient information and education about COVID-19 transmission, prevention, and symptoms, as well as about the facility's COVID-19 protocols;

    e. Staff cohorting to prevent cross-contamination from medical isolation or quarantine units to other patient living areas without known infections or exposure;

    f. Enforcement of face covering and related COVID-19 safety protocols among staff;

      g. Patient access to cleaning supplies and personal protective equipment (PPE).

2. The plan shall be submitted to the Court **no later than seven (7) days** after entry of this order.

B. <u>**Expedited Review of High-Risk Patients and Effectuation of Safe and Appropriate Discharge or Transfer**</u>

3. **Within three (3) days of entry of this order**, Defendants shall file with the Court: (1) under seal a list of all DSH-Patton patients (including those transferred from DSH-Patton to at any "surge capacity" facilities) who are over age 50 and/or suffer from one or more health conditions that put them at high risk of severe illness or death from COVID-19 according to the CDC guidelines, including name, housing unit, commitment status, and whether clinical staff have previously identified the patient as appropriate for discharge or transfer (with or pending appropriate placement/services); and (2) a description of the process used to compile the list;

4. Defendants shall, with the oversight of a court-appointed expert monitor (or monitoring team) (discussed below), conduct individualized reviews of Class members, starting with patients identified as ready for discharge or transfer in the list described in the paragraph above. Defendants shall assess, with full documentation, whether each Class member is appropriate for discharge or transfer to non-congregate or less-congregate settings, including:

    a. Assessment of the Class member's risk of severe illness or death from contracting COVID-19 at DSH-Patton;

    b. Consultation with the Class member, relevant social work and clinical staff, and, as feasible, the Class member's relatives and other personal contacts, to identify community placements, services, and supports, with meaningful engagement with and input from the Class member about discharge options and planning;

    c. Consideration of the full range of alternative placement and treatment

options, including discharge or transfer to a transitional program, a community setting, a family member's home, temporary leave, conditional release, supported housing, tele-medicine, and intensive case management services.

5. Defendants shall use all powers and procedures available under the law, including under Executive Order N-35-20, to expeditiously discharge or transfer Class Members to safer, non-congregate or less congregate settings. In order to effectuate the discharge or transfer of Class members found appropriate, Defendants shall:

    a. Identify and secure existing placement and service capacity in the community, to provide the reasonable services and supports as necessary to facilitate the safe and effective discharge of the Class member;

    b. Promptly submit to the appropriate local court any required notice of emergency transfer or release of patients, along with (as clinically appropriate) a written recommendation regarding the Class member's readiness for discharge, and complete all discharge planning and related tasks necessary to secure prompt release;

    c. Where there is no existing placement or service capacity to provide for Class members' placement and service needs, engage directly with relevant public and private service providers to create such capacity, including by allocating financial or other resources to expand placement and service capacity as needed.

    d. Identify and secure additional surge housing capacity to be operated by Defendants or their agents to ensure adequate social distancing, as described above.

6. **Every fourteen days**, Defendants shall submit a progress report to the Court (under seal, as appropriate) and Plaintiffs' counsel about implementation of the provisions set forth in Paragraphs 4 and 5, above. The report shall contain:

   a. The census of patients in each housing unit (and normal capacity of each), including any surge capacity units housing DSH-Patton patients;
   b. The number of DSH-Patton admissions within the prior 14 days;
   c. The number of DSH-Patton (i) discharges and (ii) transfers within the prior 14 days;
   d. A list of Class members who received a positive COVID-19 test in the prior fourteen days;
   e. A list of the Class member reviews completed, and the outcome of each review, consistent with the provisions set forth above;
   f. A list of the Class members discharged or transferred from DSH-Patton from the date this order is entered (with discharge/transfer date);
   g. A list of Class members remaining at DSH-Patton, with their COVID-19 status and their quarantine/isolation status, with housing location;
   h. All complaints reported to the Hospital's patient advocate regarding COVID-19 matters, and their resolution.

C. **Monitoring**

7. A court-appointed monitor shall oversee and report to the Court and Plaintiffs' Counsel on the adequacy of Defendants' policies, procedures, and precautions to protect Class members from COVID-19.
8. A second court-appointed monitor (or monitoring team) shall oversee and report to the Court on the adequacy of Defendants' actions to effectuate Class members' safe discharge or transfer from DSH-Patton.
9. **Within seven days** of entry of this order, the parties shall confer as to appropriate monitor candidates and submit jointly proposed candidates or, if the parties cannot reach agreement, each submit up to two candidates for each respective monitor position.

10. Plaintiffs' Class counsel shall be entitled to timely information regarding Class members, upon request (i.e., within five days of request). The parties shall submit to the Court a proposed Protective Order forthwith.

### D. Communication with Counsel

Defendants shall ensure that Plaintiffs' counsel have the ability to promptly and confidentially communicate with Class Members.

## **ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Defendants are also hereby ORDERED TO SHOW CAUSE why preliminary injunction shall not issue continuing the above Temporary Restraining Order.

IT IS FURTHER ORDERED that:

1. The bond requirement is waived.
2. This order is effective immediately upon issuance.
3. The Court shall retain jurisdiction to enforce the terms of this Injunction.

IT IS SO ORDERED.

DATED: _____

HONORABLE JESUS G. BERNAL
UNITED STATES DISTRICT JUDGE