SAMANTHA CHOE (SBN: 252002)
schoe@cov.com
ADDISON THOMPSON* (SBN: 330251)
athompson@cov.com
SYLVIA HUANG (SBN: 313358)
syhuang@cov.com
ANNIE SHI (SBN: 327381)
Covington & Burling LLP
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

JENNIFER STARK (SBN: 267062)
Jennifer.Stark@disabilityrightsca.org
AARON FISCHER (SBN: 24739
Aaron.Fischer@disabilityrightsca.org
ANNE HADREAS (SBN: 253377)
Anne.Hadreas@disabilityrightsca.org
SARAH GREGORY (SBN: 303973)
Sarah.Gregory@disabilityrightsca.org
KIM PEDERSON (SBN: 234785)
Kim.Pederson@disabilityrightsca.org
Disability Rights California
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200

*Attorneys for Plaintiffs*

*\* C.D. California admission application forthcoming*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# EASTERN DIVISION

| | |
|---|---|
| RICHARD HART et al., individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STEPHANIE CLENDENIN, Director of California Department of State Hospitals, in her official capacity et al., <br><br> Defendants. | Case No. 5:20-cv-1559-JGB-SHK <br><br> **PLAINTIFFS' NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR PROVISIONAL CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23** <br><br> Date:   TBD <br> Time:   TBD <br> Judge:  Hon. Jesus G. Bernal <br> Courtroom:  7D |

## PLAINTIFFS' NOTICE OF *EX PARTE* APPLICATION AND *EX PARTE* APPLICATION FOR PROVISIONAL CLASS CERTIFICATION

TO ALL PARTIES HEREIN AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT Plaintiffs will and do apply, *ex parte*, for an Order provisionally certifying a Rule 23(b)(2) injunctive and declaratory relief class comprised of all individuals who are currently confined, or will be confined in the future, at Patton State Hospital – a psychiatric facility run by the California Department of State Hospitals, during the COVID-19 pandemic and who, according to guidelines issued by the Centers for Disease Control and Prevention ("CDC"), are or might be at high risk of becoming severely ill or dying from complications related to COVID-19.

Plaintiffs have concurrently filed a motion for temporary restraining order ("TRO"). Plaintiffs' motion seeks provisional class certification for purposes of the motion for expedited relief through a TRO, and final class certification at the earliest appropriate time thereafter.

This *ex parte* application is based upon this Notice, the Memorandum of Points and Authorities, the declarations of Peter Chin-Hong, M.D., Heather Leutwyler, RN, Ph.D, NP, Anne Hadreas, Ervin Longstreet, Charles Gluck, Aldo Hernandez, Graham Waldrop, Albert Aleman, Tulio Grajeda, Jose Marin, Charles Jackson, Luke Freund, Lawrence Heine, Kenneth Lowery, Paul Quintana, James Moore, Ricardo Tapia, Aaron Fischer, Samantha Choe, the Proposed Order, which is being lodged in accordance with Local Rule 7-20, and any and all evidence, argument, or other matters that may be presented at the hearing.

The extreme danger that Plaintiffs and the proposed Class now face necessitates expedited relief in the form of provisional class certification. Within the past two weeks, 113 patients at Patton State Hospital have tested positive for COVID-19 with 89 patients testing positive since the parties met and conferred on December 4, 2020.

Three of the named plaintiffs in this lawsuit tested positive for COVID-19 since the status conference on December 7, 2020. Multiple fact declarants have also tested positive for COVID-19 this week, some of whom are now requiring hospitalization. Critical action is required now.

This application is made following the conference of counsel pursuant to L.R. 7-3. On December 4, 2020, Plaintiffs' counsel met and conferred telephonically with Defendants' counsel in which the substance of Plaintiffs' motions for class certification and for expedited relief as either a motion for preliminary injunction or a temporary restraining order was discussed. Plaintiffs' counsel informed Defendants that they would determine the type of expedited relief based on the severity of the COVID-19 outbreak at DSH-Patton, and that the Plaintiffs intended to file the applications on December 14.

On December 10, 2020, Plaintiffs' counsel informed Defendants' counsel through an email that, based on an increase of more than 100 cases in the past two weeks, including three of the named Plaintiffs, Plaintiffs intend to move for a temporary restraining order or, in the alternative, a preliminary injunction.

On both occasions, Plaintiffs' counsel communicated with Lisa Tillman, Deputy Attorney General, representing the Defendants.

Plaintiffs understand that the Defendants oppose the application.

DATED: December 14, 2020                 Respectfully submitted,

By:   */s/ Anne Hadreas*
JENNIFER STARK (SBN: 267062)
Jennifer.Stark@disabilityrightsca.org
AARON FISCHER (SBN: 247391)
Aaron.Fischer@disabilityrightsca.org
ANNE HADREAS (SBN: 253377)
Anne.Hadreas@disabilityrightsca.org
SARAH GREGORY (SBN: 303973)
Sarah.Gregory@disabilityrightsca.org
KIM PEDERSON (SBN: 234785)
Kim.Pederson@disabilityrightsca.org
**Disability Rights California**

PLAINTIFFS' NOTICE OF THE *EX PARTE* APPLICATION FOR PROVISIONAL CLASS CERTIFICATION

1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200


By:   */s/ Samantha Choe*
SAMANTHA CHOE (SBN: 252002)
schoe@cov.com
ADDISON THOMPSON* (SBN: 330251)
athompson@cov.com
SYLVIA HUANG (SBN: 313358)
syhuang@cov.com
ANNIE SHI (SBN: 327381)
ashi@cov.com
**Covington & Burling LLP**
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

iv

PLAINTIFFS' NOTICE OF THE *EX PARTE* APPLICATION FOR PROVISIONAL CLASS
CERTIFICATION

# TABLE OF CONTENTS

I.   INTRODUCTION ....................................................................... 1

II.  RELEVANT FACTS ................................................................. 4

    A.   COVID-19 is highly contagious and poses a severe risk to Patton patients................................................................................. 4

    B.   Defendants confine Plaintiffs and putative Class members in congregate settings that create enormous risk of COVID-19 transmission. ........................................................................ 6

    C.   Defendants have failed to implement adequate policies and procedures to address the crowded conditions at DSH-Patton. ............................. 8

    D.   Defendants have failed to prevent multiple COVID-19 outbreaks at DSH-Patton and continue practices that increase the risk even now. 11

III. ARGUMENT............................................................................ 14

    A.   The Proposed Class Meets the Requirements of Rule 23(a).............. 15

        1.   Numerosity: The proposed Class consists of hundreds of patients, making joinder impractical........................................ 15

        2.   Commonality: The dangerous conditions at Patton and Defendants' policies and practices raise numerous common questions of law and fact that can be answered uniformly for all Class members. ........................................................................ 17

        3.   Typicality: Named Plaintiffs' claims are representative of the proposed Class. ........................................................................ 19

        4.   Adequacy of Representation: Individual Plaintiffs and proposed Class counsel will fairly and adequately protect the interests of the Class. ........................................................................ 20

    B.   The Proposed Class Meets the Requirements of Rule 23(b)(2)........ 22

IV.  CONCLUSION........................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abdullah v. U.S. Sec. Assocs. Inc.,*
   731 F.3d 952 (9th Cir. 2013) ..................................................................... 17

*Ahlman v. Barnes,*
   445 F.Supp.3d 671 (C.D. Cal. May 26, 2020) ........................... 3, 13, 19, 23

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ............................................................... 17, 19

*B.K. by her Next Friend Tinsley v. Snyder,*
   922 F.3d 957 (9th Cir. 2019) ..................................................................... 20

*Briseno v. ConAgra Foods, Inc.,*
   844 F.3d 1121 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands,*
   *Inc. v. Briseno,* 138 S. Ct. 313 (2017) ...................................................... 23

*Carrillo v. Schneider Logistics, Inc.,*
   No. CV 11-8557, 2012 WL 556309 (C.D. Cal. Jan. 31, 2012) ...................... 3

*Fraihat v. U.S. Immigr. & Customs Enf't,*
   445 F.Supp.3d 709 (C.D. Cal. 2020) ......................................................... 19

*In re Cooper Cos. Sec. Litig.,*
   254 F.R.D. 628 (C.D. Cal. 2009) ............................................................... 15

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) ..................................................................... 20

*Hernandez v. Cnty. of Monterey,*
   305 F.R.D. 132 (N.D. Cal. 2015)............................................................... 21

*Hernandez v. Lynch,*
   No. EDCV 16-00620, 2016 WL 7116611 (C.D. Cal. Nov. 10, 2016),
   *aff'd sub nom. Hernandez v. Sessions,* 872 F.3d 976 (9th Cir. 2017) .......... 23

*Johnson v. California,*
   543 U.S. 499 (2005)................................................................................... 17

vi

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ................................................................ 15

*Kincaid v. City of Fresno*,
    244 F.R.D. 597 (E.D. Cal. 2007) ................................................................ 15

*Lynch v. Rank*,
    604 F. Supp. 30 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984) ...................... 22

*Lyon v. U.S. Immigr. & Customs Enf't*,
    300 F.R.D. 628 (N.D. Cal. 2014) ................................................................ 20

*Mays v. Dart*,
    453 F.Supp. 3d 1074 (N.D. Ill. 2020) ........................................................... 3

*Nat'l Ass'n of Radiation Survivors v. Walters*,
    111 F.R.D. 595 (N.D. Cal. 1986) ................................................................ 16

*Orantes-Hernandez v. Smith*,
    541 F. Supp. 351 (C.D. Cal. 1982) .............................................................. 15

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) ............................................................*passim*

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) ............................................................. 20, 23

*Roman v. Wolf*,
    No. EDCV 20-768, 2020 WL 1952656 (C.D. Cal. Apr. 23, 2020), *aff'd in
    part by Hernandez Roman v. Wolf*, 829 F. App'x 165 (9th Cir. 2020) ......................... 3

*Savino v. Souza*,
    453 F. Supp. 3d 441 (D. Mass. 2020) ........................................................... 3

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*,
    559 U.S. 393 (2010) ........................................................................... 14

*Torres v. Milusnic*,
    --- F.Supp.3d ---, No. CV 20-4450, 2020 WL 4197285 (C.D. Cal. July
    14, 2020) ...................................................................................... 2

*Wal-Mart Stores, Inc. v Dukes*,
    564 U.S. 338 (2011) ..................................................................... 17, 19, 23

TABLE OF AUTHORITIES

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ........................................................ 21, 22

**FEDERAL RULES**

Fed. R. Civ. P. 23 ........................................................................*passim*

**STATUTES**

42 U.S.C. §§ 12131-12134 ................................................................. 2

**OTHER AUTHORITIES**

CDC, *How to Protect Yourself & Others*,
  https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-
  sick/prevention.html ................................................................. 4, 10

CDC, *Interim Guidance on Management of Coronavirus Disease 2019
  (COVID-19) in Correctional and Detention Facilities*,
  https://www.cdc.gov/coronavirus/2019-ncov/community/correction-
  detention/guidance-correctional-detention.html ................................ 5

CDC, *People with Certain Medical Conditions*,
  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
  precautions/people-with-medical-
  conditions.html#:~:text=The%20best%20way%20to%20protect,you%20
  do%20interact%20with%20others. ................................................... 4

CDC, *Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission*,
  https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-
  cov-2.html .............................................................................. 4

CDC, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-
  ncov/prevent-getting-sick/social-distancing.html ............................... 5

Cal. State Dep't of Hosps., *Patient & Staff COVID-19 Tracking,*
  https://www.dsh.ca.gov/COVID-19/Patient_and_Staff_COVID-
  19_Tracking.html ..................................................................... 12

Cal. State Dep't of Hosps., *Department of State Hospitals - Patton*,
  https://www.dsh.ca.gov/Patton/index.html ....................................... 6

Cal. Dep't of State Hospitals, *COVID-19*, https://www.dsh.ca.gov/COVID-
  19/index.html ......................................................................... 16

Cal. Health & Human Servs. Agency, *Ethnicity,*
https://data.chhs.ca.gov/dataset/patient-
demographics/resource/0d317a4d-735d-4232-9d52-3d42f4fb3ada............................ 14

Matthew C. Riddle, et. al., *COVID-19 in People with Diabetes: Urgently
Needed Lessons from Early Reports*, 43(7) Diabetes Care 1378, (Jul.
2020) https://care.diabetesjournals.org/content/43/7/1378 ......................................... 13

Tarryn Mento, *Hypertension Continues to Be Top Underlying Health
Condition Among Local COVID-19 Deaths*, KPBS News (May 30, 2020)
https://www.kpbs.org/news/2020/may/30/more-half-san-diegans-who-
died-covid-19-had-high-b/ .............................................................................................. 13

ix

TABLE OF AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs move for the certification of this lawsuit as a class action. Plaintiffs Ervin Longstreet ("Mr. Longstreet"), Aldo Hernandez ("Mr. Hernandez"), Charles Gluck ("Mr. Gluck"), and Graham Waldrop ("Mr. Waldrop") and members of the putative class are individuals involuntarily confined at Patton State Hospital ("DSH-Patton" or "Patton"), a psychiatric facility run by the California Department of State Hospitals ("DSH"). Plaintiffs bring this suit against Stephanie Clendenin, the Director of DSH, and Janine Wallace, Director of DSH-Patton (collectively, "Defendants") in their official capacities.

Plaintiffs bring this class action on behalf of all individuals who are currently confined at DSH-Patton, or who will be confined in the future, during the COVID-19 pandemic and who are, or might be, at risk of becoming severely ill or dying from complications related to COVID-19 according to the CDC guidelines (the "Class").

The proposed Class satisfies each of the requirements of Rule 23(a), *i.e.*, numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4).

- Numerosity: The proposed Class at DSH-Patton consists of hundreds of patients, making joinder impractical. DSH-Patton is one of the largest psychiatric hospitals in the country. The facility currently operates approximately 1,527 beds, and employs approximately 2,380 people. By Defendants' own assessments, a disproportionately high number of the patients have conditions that put them at greater risk for developing COVID-19 complications.

- Commonality: Defendants subject all DSH-Patton patients who are at high risk for becoming severely ill from COVID-19 to the same crowded, congregate living arrangements at DSH-Patton and apply the same policies and practices

1

related to lack of social distancing, infection control, and patient confinement and discharge. The existence of these facility-wide conditions and practices, and whether they violate the Due Process Clause of the Fourteenth Amendment and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12134, present common questions of fact and law that are capable of class wide resolution.

- <u>Typicality</u>: Plaintiffs' claims are representative of the claims of the proposed Class. Mr. Longstreet, Mr. Gluck, Mr. Hernandez and Mr. Waldrop are challenging the very same conditions, policies and practices to which all high-risk DSH patients are subjected. Thus, their claims are co-extensive and typical as those of other members of the proposed Class.

- <u>Adequacy of Representation</u>: Plaintiffs and proposed Class Counsel will fairly and adequately protect the interests of the proposed Class. Plaintiffs have sufficient knowledge of the policies and practices at issue – and the impact these policies have had on them – and have committed to vigorously pursuing this action as class representatives. Plaintiffs and class counsel do not have any conflicts of interest with other class members and are well-equipped to protect the shared interests of the proposed Class.

The proposed Class also qualifies for certification under Rule 23(b)(2). Defendants have "acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Plaintiffs challenge Defendants' failures to protect the safety and well-being of the members of the putative Class throughout the facility, including Defendants' failure to implement reasonable measures to protect against transmission of COVID-19 – such as provision of adequate social distancing – and their failure to conduct an adequate review of the patient population and to release or transfer suitable high-risk patients to safer, non-congregate settings.

Courts across the country routinely certify classes of individuals who, like Plaintiffs here, allege that the conditions of confinement violate the constitutional and statutory rights of those in their custody by subjecting them to a heightened risk of exposure to COVID-19. *See, e.g.*, *Torres v. Milusnic*,  --- F.Supp.3d ---, No. CV 20-4450, 2020 WL 4197285 (C.D. Cal. July 14, 2020) (certifying provisional class of federal prisoners challenging the conditions of their confinement in light of COVID-19 pandemic); *Ahlman v. Barnes*, 445 F.Supp.3d 671, 683 (C.D. Cal. May 26, 2020) (provisionally certifying disabled and medically vulnerable subclasses of detainees at Orange County jail challenging conditions in light of COVID-19 pandemic); *Roman v. Wolf*, No. EDCV 20-768, 2020 WL 1952656, at *1 (C.D. Cal. Apr. 23, 2020) (certifying provisional class of ICE detainees challenging conditions in light of COVID-19 pandemic), *aff'd in part by Hernandez Roman v. Wolf*, 829 F. App'x 165 (9th Cir. 2020); *see also Mays v. Dart*, 453 F.Supp.3d 1074, 1087 (N.D. Ill. 2020) (certifying provisional subclass of medically-vulnerable pre-trial detainees exposed to COVID-19 for the purpose of a TRO); *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (granting class certification involving immigration detainees seeking release or implementation of social distancing in light of COVID-19 risks).

The Court has the authority to provisionally certify a class for purposes of entering emergency preliminary injunctive relief under Rule 23(b)(2) so long as Plaintiffs meet the four prerequisites of Rule 23(a). *Ahlman*, 445 F.Supp.3d at 686-87 (citing *Parsons v. Ryan*, 754 F.3d 657, 689 (9th Cir. 2014)); *Carrillo v. Schneider Logistics, Inc.*, No. CV 11-8557, 2012 WL 556309, at *9 (C.D. Cal. Jan. 31, 2012) (internal citation omitted).

Plaintiffs respectfully request the Court to grant this Motion for Provisional Class Certification in tandem with the temporary restraining order that Plaintiffs concurrently seek, to ensure that the preliminary relief applies to all members of the proposed Class.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE *EX PARTE* APPLICATION FOR PROVISIONAL CLASS CERTIFICATION

## II.   RELEVANT FACTS

### A.   COVID-19 is highly contagious and poses a severe risk to Patton patients.

COVID-19 is a highly contagious disease that poses a severe health and safety risk to people in congregate settings, including Plaintiffs and other patients in DSH-Patton. COVID-19 is principally spread through respiratory droplets produced when an infected person coughs, sneezes, or talks.[1] These droplets can land in the mouths or noses of people who are nearby or possibly be inhaled into the lungs.[2] COVID-19 also can spread through airborne transmission of infected droplets and particles that linger in the air, especially in enclosed spaces with poor ventilation, or through contact with contaminated surfaces.[3]

There is no widely available vaccine or cure for COVID-19. Although vaccines have begun to receive approval and a limited number of doses may be distributed soon, there is no estimate about when full vaccination of the public, including patients at Patton, will be completed.[4] Until widespread vaccination occurs, the "best way to protect [oneself from COVID-19] and to help reduce the spread of the virus that causes COVID-19 is to [l]imit …interactions with other people as much as possible."[5] The CDC advises

---

[1] Declaration of Peter Chin-Hong, MD ("Chin-Hong Decl."), ¶ 6; CDC, *How to Protect Yourself & Others*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Nov. 27, 2020).

[2] *Id.*

[3] Chin-Hong Decl. ¶¶ 6-7; CDC, *Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission*, https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html (last updated Oct. 5, 2020).

[4] Chin-Hong Decl. ¶51.

[5] CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#:~:text=The%20best%20way%20to%20protect,you%20do%20interact%20with%20others. (last updated Dec. 1, 2020); CDC, *How to Protect Yourself & Others*,

---

4

social distancing because the greatest risk of infection is through direct or close contact with an infected person.[6]

Recognizing the substantial risk of coronavirus spreading in locked congregate settings such as DSH-Patton, the CDC encourages facilities to coordinate with local government agencies and courts to "[c]onsider options to prevent overcrowding (e.g., diverting new intakes to other facilities with available capacity, and encouraging alternatives to incarceration and other decompression strategies where allowable)."[7] The Substance Abuse and Mental Health Services Administration ("SAMHSA") recommends that mental health facilities consider alternatives to confinement. Due to the risks of COVID-19 in such facilities, SAMHSA advises that inpatient treatment be reserved only for people "with mental disorders that are life threatening," and recommends the use of outpatient treatment "to the greatest extent possible."[8] For those who must remain in locked congregate facilities, the CDC recommends specific protocols related to COVID-19 preparedness, prevention, and management.[9]

---

https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Nov. 27, 2020); *see also* Chin-Hong Decl. ¶ 55 ("In short, until public health data affirmatively demonstrate that the risk of COVID-19 transmission and severe illness has abated, there is no scientific basis for refraining from any and all available measures to prevent virus transmission, especially in congregate facilities like DSH-Patton.").

[6] CDC, *Social Distancing,* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html (last updated Nov. 17, 2020); ); *see also* Chin-Hong Decl. ¶17 ("Without adequate social distancing, and even with other precautions, it is impossible to adequately protect people in congregate institutional settings from virus transmission.".

[7] *See* CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Dec. 3, 2020).

[8] Declaration of Anne Hadreas ("Hadreas Decl.") ¶ 13, Ex. E.

[9] *See* CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, https://www.cdc.gov/coronavirus/2019-

**B.      Defendants confine Plaintiffs and putative Class members in congregate settings that create enormous risk of COVID-19 transmission.**

DSH-Patton, in operation for 127 years, is a forensic psychiatric facility in San Bernardino County. DSH-Patton confines forensically and civilly committed people in a locked facility. All admissions are involuntary.[10]

Two prominent experts, Dr. Peter Chin-Hong, director of the UCSF School of Medicine's Infectious Diseases/Immunocompromised Host and Transplant Infectious Diseases Program, and Heather Leutwyler, Ph.D., Associate Professor and Vice-Chair in the Department of Physiological Nursing at the UCSF School of Nursing, have reviewed the conditions and circumstances at DSH-Patton. They have made extensive findings that the conditions at DSH-Patton create enormous risk of COVID-19 transmission and mass outbreaks, putting putative Class members at great risk of severe illness or death.[11]

DSH-Patton's congregate settings and crowded conditions are a critical concern. Patients are housed in units of approximately 50 patients each.[12] Up to five patients share bedrooms at Patton.[13] There is often less than six feet of space between each bed.[14]

---

[10] ncov/community/correction-detention/guidance-correctional-detention.html (last updated Dec. 3, 2020).
[10] Cal. Dep't of State Hospitals, *Department of State Hospitals - Patton*, https://www.dsh.ca.gov/Patton/index.html, (last visited Dec. 12, 2020).
[11] Chin-Hong Decl. ¶¶ 17-18, 33; Declaration of Heather Leutwyler, Ph.D. ("Leutwyler Decl.") ¶¶ 12-21.
[12] Declaration of Ervin Longstreet ("Longstreet Decl."), ¶¶ 8-9, 22; Declaration of Charles Gluck ("Gluck Decl."), ¶¶ 6, 11; Declaration of Aldo Hernandez ("Hernandez Decl."), ¶¶ 8, 12; Declaration of Graham Waldrop ("Waldrop Decl."), ¶¶ 7-8, 18; Declaration of Albert Aleman ("Aleman Decl."), ¶¶ 4, 9, 12; Declaration of Tulio Grajeda ("Grajeda Decl.), ¶ 6; Declaration of Jose Marin ("Marin Decl."), ¶¶ 5, 10; Declaration of Charles Jackson ("Jackson Decl."), ¶ 6; Declaration of Luke Freund ("Freund Decl."), ¶6.
[13] Longstreet Decl. ¶ 12; Gluck Decl. ¶ 7; Hernandez Decl. ¶ 13; Waldrop Decl. ¶¶ 12-13; Aleman Decl. ¶¶ 6, 10; Grajeda Decl. ¶ 7; Marin Decl. ¶ 6.
[14] Hernandez Decl. ¶ 13; Gluck Decl. ¶ 7; Aleman Decl. ¶ 6; Grajeda Decl. ¶ 7.

Bedrooms are so small that patients are able to touch the adjacent beds while sitting or lying on their own beds.[15]

Within each unit at DSH-Patton, patients share restrooms, a day room, telephones, computers, and drinking fountains.[16] In the day rooms, patients watch television, play cards and games, and pass the time.[17] The seats within the day rooms are arranged close to each other, and it is not possible to move them six feet apart.[18]

Many units are connected to a "sister" unit. Sister units share a hallway and a day room.[19] Patients from sister units line up in the shared hallway to receive medications, and regularly pass each other closer than six feet.[20] Because of this configuration, patients at Patton are exposed to up to 100 other patients, in addition to several staff members.[21]

Patients are required to eat at a common dining area shared by patients from multiple units.[22] In the dining area, patients sit close to one another, five to a table, to eat. There is no space for patients to socially distance while eating, a time when masks cannot be worn.[23] Dining tables are not adequately cleaned and sometimes have leftover food and scraps on them from the patients who ate earlier.[24]

---

[15]Hernandez Decl. ¶ 13; Waldrop Decl. ¶ 12.
[16] Longstreet Decl. ¶¶ 10, 15, 17; Gluck Decl. ¶ 8; Hernandez Decl. ¶¶ 9, 11, 14; Waldrop Decl. ¶¶ 8, 10, 14, 17-18; Aleman Decl. ¶ 7; Grajeda Decl. ¶¶ 8-9, 14; Marin Decl. ¶¶ 7, 10; Jackson Decl. ¶ 6.
[17] Longstreet Decl. ¶ 10; Gluck Decl. ¶ 14; Hernandez Decl. ¶ 9; Waldrop Decl. ¶ 8.
[18] Longstreet Decl. ¶ 11; Hernandez Decl. ¶ 14; Waldrop Decl. ¶¶ 8, 14.
[19] Longstreet Decl. ¶¶ 9-10, 19, 21; Hernandez Decl. ¶¶ 9, 10, 17; Waldrop Decl. ¶¶ 8-9, 17.
[20] Gluck Decl. ¶ 13; Hernandez Decl. ¶ 10; Waldrop Decl. ¶ 9.
[21] Longstreet Decl. ¶¶ 10, 19; Gluck Decl. ¶ 15; Hernandez Decl. ¶ 12; Waldrop Decl. ¶ 11.
[22] Longstreet Decl. ¶ 18; Gluck Decl. ¶ 9; Hernandez Decl. ¶ 15; Waldrop Decl. ¶ 15.
[23] Longstreet Decl. ¶¶ 18-19; Gluck Decl. ¶ 9; Hernandez Decl. ¶ 16; Waldrop Decl. ¶¶ 15-16; Aleman Decl. ¶ 11.
[24] Waldrop Decl. ¶ 16.

The patient units lack adequate ventilation necessary to mitigate the risk of virus transmission.[25] Ventilation that allows sufficient air exchange is essential to protect against transmission in indoor settings, even when social distancing is possible (which it is not at Patton).[26] The units do not have windows that open to allow for circulation of fresh air.[27] The lack of outside airflow is inconsistent with public health guidance and creates additional, unreasonable risk of mass transmission.[28]

The dense, communal conditions at DSH-Patton place patients at high risk for contracting the virus. Among public health experts, there is general consensus that congregate institutional settings should operate at no higher than 50% capacity.[29] As discussed below, Defendants have failed to take adequate steps to reduce crowding or otherwise ensure appropriate social distancing.[30]

### C.     Defendants have failed to implement adequate policies and procedures to address the crowded conditions at DSH-Patton.

Despite the increased risk of COVID-19 transmission in the congregate Patton settings, Defendants have failed to implement adequate policies and procedures to address the population density at the facility. Defendants continue to detain Plaintiffs and putative Class members at DSH-Patton in crowded conditions, subjecting them to a greater risk of becoming severely ill or dying from COVID-19.

The measures available to Defendants to reduce the patient population and allow for greater social distancing, but which they have failed to adopt, include undertaking a robust, systematic review of high-risk patients in order to identify who can be safely and

---

[25] Chin-Hong Decl. ¶¶ 25-29.
[26] Chin-Hong Decl. ¶¶ 17-25.
[27] Gluck Decl. ¶ 10; Grajeda Decl. ¶ 10; Chin-Hong Decl. ¶ 28.
[28] Chin-Hong Decl. ¶ 29.
[29] Chin-Hong Decl. ¶ 22
[30] Chin-Hong Decl. ¶ 24

effectively discharged to safer, less crowded settings; expediting discharge efforts for high-risk patients with appropriate services and supports; and transferring high-risk patients to non-congregate settings, including utilizing available facilities.[31]

Defendants have refused to enact widespread efforts to reduce capacity, as necessary to facilitate social distancing. Although Defendants activated a "surge capacity" facility in Norwalk on December 7, 2020, to transport 43 female patients out of DSH-Patton, this too late, one-time transfer is insufficient. As noted by Dr. Chin-Hong, Defendants are using this facility "only *after* an untenable number of patients have tested positive at DSH-Patton," as opposed to "proactively … facilitate[ing] adequate social distancing to mitigate the risk of virus transmission (as should be the case)."[32] Additionally, despite the Norwalk facility having capacity for up to 98 patients, Defendants have chosen to transfer less than half of this number out of Patton. Moreover, even if Defendants had transferred 98 patients out of the Patton, this number still would be "insufficient to facilitate adequate reduction of crowding in the DSH-Patton living areas to allow for necessary social distancing for patients."[33]

Moreover, Defendants' practices contradict the public health guidance for locked congregate facilities and exacerbate the risk of COVID-19 transmission and infection at DSH-Patton.[34] For example, Defendants allow staff members at DSH-Patton to take extra shifts on units where they do not ordinarily work, including between units with and without actual or suspected COVID-19 contamination.[35] This practice of "floating" between units significantly, and unreasonably, increases the risk that staff members who

---

[31] Hadreas Decl. ¶ 12.

[32] Chin-Hong Decl. ¶23; Leutwyler Decl. ¶ 29.

[33] *Id.*

[34] Chin-Hong Decl. ¶¶ 44-45.

[35] Longstreet Decl. ¶ 35; Gluck Decl. ¶ 28; Hernandez Decl. ¶ 36; Waldrop Decl. ¶¶ 27, 29; Grajeda Decl. ¶ 36.

9

have been exposed to COVID-19 will transmit the virus to patients throughout multiple units.[36]

Indeed, this practice may have led to an outbreak in Units 26 and 27.[37] Defendants placed Units 26 and 27 on quarantine in October, after an infected staff member exposed patients to COVID-19, and that quarantine continued into December.[38] In early December, dozens of putative Class members in those two units tested positive for COVID-19, including three of the named Plaintiffs. As Dr. Chin-Hong notes, the outbreak in those and other units – which occurred weeks after quarantine status was implemented – shows that "even with quarantine protocols meant to prevent or slow transmission of the virus, the virus' transmission has accelerated rapidly."[39] Defendants' failure to ensure appropriate social distancing and their use of crowded COVID-19 units (including for quarantines) has created a situation "*more* conducive to mass transmission."[40]

Defendants have failed to take necessary measures within the facility to ensure (a) regular disinfection, (b) frequent and thorough hand washing with soap, and (c) the proper use of masks and protective equipment, all of which public health guidance specifically recommends.[41] Defendants do not provide adequate access to wipes or other disinfectant for patients to clean the telephones before and after use.[42] Other high-touch fixtures in the patient units, including tables, drinking fountains, computers, and

---

[36] Chin-Hong Decl. ¶ 41.

[37] *See* Hadreas Decl. ¶ 9.

[38] Longstreet Decl. ¶ 35; Gluck Decl. ¶¶ 29, 31; Hernandez Decl. ¶¶ 34, 36; Waldrop Decl. ¶¶ 28-29; Aleman Decl. ¶¶ 18-19; Grajeda Decl. ¶¶ 35-36.

[39] Chin-Hong Decl. ¶ 14.

[40] Chin-Hong Decl. ¶ 31.

[41] CDC, *How to Protect Yourself & Others*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Nov. 27, 2020).

[42] Longstreet Decl. ¶ 17; Hernandez Decl. ¶ 32; Waldrop Decl. ¶ 24; Marin Decl. ¶ 8.

bathrooms are often dirty, indicating that they are not cleaned on a regular basis.[43] Defendants do not provide patients with hand sanitizer, and the facility frequently fails to refill hand soap dispensers in a timely fashion.[44] Plaintiffs and putative Class members report that staff members wear masks improperly, such as below their nose or uncovering their mouths when they are talking to each other.[45]

Further, Defendants fail to provide patients with basic information about COVID-19 on a regular basis, including ways to prevent contracting COVID-19 and what to do when patients are exposed to COVID-19.[46] Lack of adequate patient information and education about the virus compromises prevention efforts and causes unnecessary stress for the patients.[47]

In short, Defendants have failed to address the heightened risk of COVID-19 resulting from the persistently dense congregate settings at DSH-Patton. Defendants' facility-wide policies and practices further increase Plaintiffs' and putative Class members' risk of becoming severely ill and/or dying because of COVID-19.

### D.   Defendants have failed to prevent multiple COVID-19 outbreaks at DSH-Patton and continue practices that increase the risk even now.

Since COVID-19 reached DSH-Patton earlier this year, it has spread rapidly throughout the facility. At the time this action was filed in August 2020, at least 112 patients and 147 facility staff at DSH-Patton had tested positive for COVID-19, and at

---

[43] Hernandez Decl. ¶¶ 11, 30; Waldrop Decl. ¶¶ 10, 16; Declaration of Lawrence Heine ("Heine Decl.") ¶ 8.

[44] Marin Decl. ¶ 13; Aleman Decl. ¶ 8.

[45] Hernandez Decl. ¶ 33; Waldrop Decl. ¶ 26.

[46] Longstreet Decl. ¶ 7; Gluck Decl. ¶¶ 5, 25-26; Waldrop Decl. ¶ 6; Aleman Decl. ¶¶ 3, 14; Grajeda Decl. ¶ 4; Marin Decl. ¶¶ 4, 23. Instead, patients at DSH-Patton report learning most of this by watching the news on television. Longstreet Decl. ¶¶ 4-5, 7; Gluck Decl. ¶¶ 5, 25; Waldrop Decl. ¶¶ 4, 6; Declaration of Kenneth Lowery ("Lowery Decl.") ¶ 6.

[47] Chin-Hong Decl. ¶¶ 36-39.

---

least two patients had died from complications after contracting the virus.[48] As of December 10, 2020, the number of Patton patients who had tested positive (306) has tripled since the case was filed. And at least ten Patton patients have died after contracting COVID-19.[49]

As evidence of the devastating impact of the spread within a congregate setting, at least five patients housed in DSH-Patton's Unit EB-09 have died after contracting COVID-19.[50] Likewise, more than half of the 50 patients who reside in DSH-Patton's Unit 24 contracted COVID-19 during a significant outbreak.[51] At least one patient from Unit 24 died after contracting COVID-19.[52]

COVID-19 continues to terrorize DSH-Patton. In just six days, between December 4 and December 10, at least 81 patients and 54 staff and on-site personnel tested positive.[53] And at least three named Plaintiffs – Mr. Waldrop, Mr. Hernandez, and Mr. Longstreet – recently tested positive for COVID-19.[54]

Plaintiffs and members of the proposed Class who have submitted declarations in support of this motion fear that exposure to the virus could cause severe illness or death given their medical conditions and other risk factors.[55] Their fears are well-founded.

---

[48] The Department of State Hospitals provides the number of patient and staff who have tested positive for COVID-19, as well as information on the number of deaths, five times a week. *See* Cal. Dep't of State Hospitals, *Patient & Staff COVID-19 Tracking* https://www.dsh.ca.gov/COVID-19/Patient_and_Staff_COVID_19_Tracking.html. (last visited Dec. 12, 2020)

[49] Hadreas Decl. ¶¶ 8-9.

[50] Jackson Decl. ¶ 5.

[51] Marin Decl. ¶ 14; Declaration of Paul Quintana ("Quintana Decl.") ¶ 7.

[52] Marin Decl. ¶ 20.

[53] Hadreas Decl. ¶ 8.

[54] Declaration of Kim Pederson ¶ 7; Hadreas Decl. ¶ 10.

[55] Longstreet Decl. ¶ 5; Gluck Decl. ¶¶ 4, 24; Hernandez Decl. ¶¶ 4, 38; Waldrop Decl. ¶ 4; Aleman Decl. ¶ 14; Grajeda Decl. ¶ 3; Marin Decl. ¶ 4; Quintana Decl. ¶ 12;

People with one or more high-risk factors have significantly increased rates of severe illness or death, with some estimates putting the fatality rate as high as 20%.[56] Plaintiffs, along with many of the patients at DSH-Patton, fit into one or more of these high-risk categories.[57] For example, Mr. Longstreet and Mr. Gluck have hypertension, which has been identified as a "leading factor" in COVID-19-related deaths.[58] Mr. Waldrop and Mr. Hernandez have type 2 diabetes and severe obesity. Research has shown the mortality rate of COVID-19 patients with diabetes to be approximately three times the general rate.[59] The CDC also has found that obesity, defined as a body mass index ("BMI") of over 30, increases an individual's risk for severe COVID-19 illness; Mr. Hernandez and Mr. Waldrop both have BMIs above 30.[60]

In addition, the CDC has recognized that the risk of severe illness from the virus increases with age, with a significant increase in risk starting at age 50.[61] Numerous Patton patients, including Mr. Gluck and Mr. Longstreet, are over 50 years old.[62] The CDC also has reported that people from certain racial and ethnic groups – including

---

Declaration of James Moore ("Moore Decl.") ¶ 5; Declaration of Ricardo Tapia ("Tapia Decl.") ¶¶ 5, 8-9; Lowery Decl. ¶¶ 5-6; Freund Decl. ¶¶ 4-5.
[56] Chin-Hong Decl. ¶ 8; Leutwyler Decl. ¶ 15; Hadreas Decl. ¶¶ 16-20, Ex. H; *see also Ahlman*, 445 F. Supp. 3d at 679 (noting that "COVID-19 is particularly dangerous to people who are older or have certain health conditions and disabilities, including diabetes, lung disease, heart disease, and compromised immune systems").
[57] Leutwyler Decl. ¶¶ 12-14.
[58] Tarryn Mento, *Hypertension Continues to Be Top Underlying Health Condition Among Local COVID-19 Deaths*, KPBS News (May 30, 2020), https://www.kpbs.org/news/2020/may/30/more-half-san-diegans-who-died-covid-19-had-high-b/.
[59] Matthew C. Riddle, et. al., *COVID-19 in People with Diabetes: Urgently Needed Lessons from Early Reports*, 43(7) Diabetes Care 1378, (Jul. 2020) https://care.diabetesjournals.org/content/43/7/1378.
[60] Leutwyler Decl. ¶ 17(b), (c).
[61] Chin-Hong Decl. ¶ 9; Hadreas Decl. ¶ 20, Ex. H.
[62] Gluck Decl. ¶ 4; Longstreet Decl. ¶ 4.

13

Black and Latinx people – are "at increased risk of getting sick and dying from COVID-19."[63] Many patients, including Mr. Longstreet and Mr. Hernandez, are Black and/or Latinx.[64]

Defendants' own estimates of the age and health risks of the population support this proposition. As they noted in the Joint Status Report, "[n]early 25% of the patients in DSH hospitals are 60 or older and, regardless of age, individuals with serious mental illness typically have a 20% higher risk of morbidity and mortality than the general population."[65] These patients are at high risk of severe illness or death from COVID-19.

### III.   ARGUMENT

Plaintiffs satisfy the requirements set forth in Rule 23 and therefore have a "categorical" right to "pursue [their] claim[s] as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398 (2010); *see* Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(1)(A). The proposed Class meets the requirements for class certification under Federal Rule of Civil Procedure 23(a). Further, certification under Rule 23(b)(2) is appropriate because this case seeks purely declaratory and injunctive relief. For the reasons set forth below, Plaintiffs satisfy Rule 23, and the Court should grant certification.

---

[63] Chin-Hong Decl. ¶ 10; Hadreas Decl. ¶ 19.
[64] Leutwyler Decl. ¶ 17(a), (b). According to the most recent DSH patient demographic information published by California, approximately half of the patient population was Black and/or Latinx. *See* Cal. Health & Human Servs. Agency, *Ethnicity,* https://data.chhs.ca.gov/dataset/patient-demographics/resource/0d317a4d-735d-4232-9d52-3d42f4fb3ada. (last visited Dec. 12. 2020)
[65] Joint Status Report, p. 5 (ECF No. 21).

**A.     The Proposed Class Meets the Requirements of Rule 23(a).**

      **1.     Numerosity: The proposed Class consists of hundreds of patients, making joinder impractical.**

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012). Although there is no specific numeric cutoff that establishes numerosity, it "is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009); *see also Keegan*, 284 F.R.D. at 522. Plaintiffs need only "show some evidence of or reasonably estimate the number of class members." *Kincaid v. City of Fresno*, 244 F.R.D. 597, 601 (E.D. Cal. 2007). The numerosity requirement is met here.

Even without knowing the exact size of the proposed Class, numerosity is met because DSH-Patton holds over 1,500 patients, and a significant number of these patients have conditions that put them at high risk for developing COVID-19 complications.[66] *See Orantes-Hernandez v. Smith*, 541 F. Supp. 351, 370 (C.D. Cal. 1982) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").

As Defendants recognize, individuals with serious mental illness typically have a 20% higher risk of morbidity and mortality related to COVID-19 than the general population.[67] Patients at DSH-Patton are statistically more likely than the general population to be obese and to have obesity-related medical conditions, such as type 2

---

[66] Hadreas Decl. ¶ 6, 29, Ex. P; Leutwyler Decl. ¶¶ 12-14.
[67] Joint Status Report, p. 5 (ECF No. 21).

diabetes and cardiovascular disease.[68] Approximately 10% of people with serious mental illness have a form of heart disease.[69] Approximately 51% of people with serious mental illness have hypertension.[70] Applying these percentages to the population at DSH-Patton yields several hundred patients who likely have CDC-identified COVID-19 risk factors.[71]

Hundreds of Class members are at high risk because they are older, which greatly increases the likelihood of severe complications from COVID-19. According to Defendants, nearly 25% of DSH patients are over the age of 60.[72]

Numerosity is also met because DSH-Patton continues to accept new admissions, making the population inherently fluid, and the Class includes future patients held at the facility.[73] *See Nat'l Ass'n of Radiation Survivors v. Walters*, 111 F.R.D. 595, 599 (N.D. Cal. 1986) ("'[W]here the class includes unnamed, unknown future members, joinder of such unknown individuals is impracticable and the numerosity requirement is therefore met,' regardless of class size.") (internal citation omitted).

---

[68] Hadreas Decl. ¶ 24, Ex. K, (Approximately 52% of people with serious mental illness are obese, and more than 28% have type 2 diabetes, which is more than double the rate of the general population).

[69] Hadreas Decl. ¶ 26, Ex. M.

[70] Hadreas Decl. ¶ 27, Ex. N.

[71] Hadreas Decl. ¶¶ 24-25, Exs. K, L; Leutwyler Decl. ¶¶ 13-14.

[72] Joint Status Report, ECF No. 21 at 5(Defendants' statistics). Many Class members are also at higher risk based on their race or ethnicity. Approximately 26% of DSH patients are Black and that 24% are Latinx. Hadreas Decl. ¶ 21, Ex. I; Leutwyler Decl. ¶ 16.

[73] Cal. Dep't of State Hospitals, *COVID-19*, https://www.dsh.ca.gov/COVID-19/index.html ("Admissions of certain categories of patients were temporarily suspended from mid-March through late May but have since resumed.")

### 2. Commonality: The dangerous conditions at Patton and Defendants' policies and practices raise numerous common questions of law and fact that can be answered uniformly for all Class members.

The proposed Class satisfies the commonality requirement because there are numerous "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). These questions relate to "common contention[s]" that are "capable of classwide resolution." *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 350 (2011); *see also Parsons*, 754 F.3d at 675.

Defendants subject all DSH-Patton patients who are at high risk of becoming severely ill from COVID-19 to the same crowded, congregate living arrangements at DSH-Patton, and this high-risk population likewise is subject to a lack of social distancing, infection control, and discharge planning.[74] The existence of these facility-wide conditions and practices present common questions of fact and law "whose truth or falsity can be determined in one stroke." *Parsons*, 754 F.3d at 678; *see also Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (*abrogated on other grounds* by *Johnson v. California*, 543 U.S. 499 (2005) ("For civil rights class actions, commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members."). Commonality can be established by a single common issue. *Abdullah v. U.S. Sec. Assocs. Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (Commonality "does not . . . mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'").

While "all that Rule 23(a)(2) requires is a single *significant* question of law or fact," *Abdullah*, 731 F.3d at 957  (citation omitted), Plaintiffs presents numerous factual questions common to all Class members including:

---

[74] *See, e.g.*, Hadreas Decl. ¶ 11, Ex. D.

17

- Whether all proposed Class members are confined in congregate settings and crowded conditions that expose them to close and direct contact with large numbers of other patients and staff;

- Whether, because of the congregate and crowded conditions, proposed Class members are unable maintain appropriate social distancing as advised by the CDC and other public health sources;

- Whether Defendants have failed to implement policies and procedures to address the crowded, congregate settings, including by expediting discharge planning for high-risk patients, transferring high-risk patients to non-congregate settings, or reducing the patient population to allow for appropriate social distancing;

- Whether the current policies and procedures have failed to reasonably address the risk of COVID-19 outbreaks at the facility;

- Whether current practices by the Defendant unreasonably increase the risk of additional COVID-19 outbreaks at the facility; and

- Whether all Class members have CDC-identified risk factors that put them at heightened risk of severe illness or death if they contract COVID-19.

These factual questions are common to all proposed Class members at Patton because, regardless of their commitment statuses. Plaintiffs and the proposed Class members they seek to represent are essentially "as one in their exposure to a particularly and sufficiently well-defined set of allegedly illegal policies and practices." *Parsons*, 754 F.3d at 679; *see id.* at 682 (approving district court finding of common factual questions when detained class was subject to same systemic policies).

Similarly, Plaintiffs present legal questions common to all proposed Class members, including whether the conditions at the facility and Defendants' inability to protect them from the heightened risk they face from COVID-19 violate the constitutional and statutory rights of the Class members as provided in the Due Process Clause of the Fourteenth Amendment and Title II of the Americans with Disabilities Act.

As this Court has observed, the fact that different class members may have "varying medical conditions and risk factors" does not defeat commonality. *Fraihat v. U.S. Immigr. & Customs Enf't.*, 445 F.Supp.3d 709. 738 (C.D. Cal. 2020) ; *see also Ahlman,* 445 F. Supp. 3d at 685 ("Rule 23(a)(2) has been construed permissively.... The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.") (quotation marks omitted); *Wal-Mart Stores*, 564 U.S. at 350 ("What matters to class certification ... is … the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.").

Thus, Rule 23(a)'s commonality requirement is satisfied here because putative Class members have "suffered the same injury," and the uniform answers to the legal and factual questions presented in this case will "drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350; *Parsons*, 754 F.3d at 678 ("[A]lthough a presently existing risk may ultimately result in different future harm for different inmates – ranging from no harm at all to death – every inmate suffers exactly the same constitutional injury when he is exposed to a single … policy or practice that creates a substantial risk of serious harm"); *Armstrong*, 275 F.3d at 868 (rejecting defendants' argument that the varied nature of class members' disabilities precluded finding commonality and concluding "the differences that exist here do not justify requiring groups of persons with different disabilities, all of whom suffer similar harm from the Board's failure to accommodate their disabilities, to prosecute separate actions.").

### 3.   Typicality: Named Plaintiffs' claims are representative of the proposed Class.

Plaintiffs Mr. Longstreet, Mr. Hernandez, Mr. Gluck, and Mr. Waldrop satisfy the typicality requirement because they challenge and have been subjected to the same crowded, congregate settings within the facility and the Defendants' practices that expose vulnerable patients to a heightened risk of COVID infection. Fed. R. Civ. P. 23(a)(3).

This requirement is met because the claims of the named representatives are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *see also B.K. by her Next Friend Tinsley v. Snyder*, 922 F.3d 957, 970 (9th Cir. 2019) ("The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'").

Plaintiffs' medical conditions and backgrounds are typical of the proposed Class.[75] Each of the Plaintiffs has one or more risk factors that increases their risk of serious illness or death from COVID-19. Mr. Longstreet and Mr. Gluck have hypertension. Mr. Waldrop and Mr. Hernandez have type 2 diabetes and severe obesity.

Further, Plaintiffs' claims arise from the same conditions of their confinement and Defendants' failure to take sufficient steps to protect the proposed Class in light of their high risk of developing severe complications or death from contracting COVID-19. *See Parsons*, 754 F.3d at 686.

Accordingly, the typicality element is met because Plaintiffs' claims are representative of, and co-extensive with, those of other class members.

**4.    Adequacy of Representation: Individual Plaintiffs and proposed Class counsel will fairly and adequately protect the interests of the Class.**

Plaintiffs and Class Counsel will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011); *Rodriguez*, 591 F.3d at 1125 (The adequacy requirement "depends on 'the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'").

---

[75] Longstreet Decl. ¶ 4; Hernandez Decl. ¶ 4, Gluck Decl. ¶ 4; Waldrop Decl. ¶ 4.

Plaintiffs will fairly and adequately represent the interests of the class because they seek the same relief, and do not have any conflicts of interest.[76] *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (holding that, for adequacy of representation, "factual differences … have no bearing on the class representatives' abilities to pursue the class claims vigorously and represent the interests of the absentee class member"); *see also Lyon v. U.S. Immigr. & Customs Enf't*, 300 F.R.D. 628, 640-41 (N.D. Cal. 2014) (finding that adequacy of representation does not require the named plaintiffs to be detained under the same statute as other absent class members).

Like typicality, the adequacy requirement focuses on the similarity of Plaintiffs' *legal claims*, rather than any factual differences. *Walters*, 145 F.3d at 1046 ("[T]he government erroneously emphasizes factual differences in [its adequacy arguments]."); *see also Lyon*, 300 F.R.D. at 640-41 (finding that adequacy of representation does not require the named plaintiffs to be detained under the same statute as other absent class members). As discussed above, the legal claims of Plaintiffs and the proposed Class are the same. The continuing injury to Plaintiffs and the proposed Class has arisen because of the prevailing conditions at DSH-Patton. Plaintiffs all seek the same relief – declaratory relief regarding violations of their Constitutional and statutory rights, and injunctive relief requiring change to unsafe conditions and inadequate policies and practices addressing Defendants' response to COVID-19 at the facility. *See generally, Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 160 (N.D. Cal. 2015) ("Class representatives have less risk of conflict with unnamed class members when they seek only declaratory and injunctive relief."). Because Plaintiffs and the proposed Class have the same injury and seek the same relief, Plaintiffs will fairly and adequately represent the interests of the class.

Further, Plaintiffs' Class counsel are qualified to fairly and adequately represent the class because of their experience in previous class actions and cases involving the

---

[76] Longstreet Decl. ¶¶ 47, 50; Hernandez Decl. ¶¶ 43, 46; Gluck Decl. ¶¶ 37, 40; Waldrop Decl. ¶¶ 36, 39.

same area of law. *See Lynch v. Rank*, 604 F. Supp. 30, 37 (N.D. Cal. 1984), *aff'd*, 747 F.2d 528 (9th Cir. 1984). Plaintiffs and the proposed Class are represented by counsel from Disability Rights California ("DRC") and Covington & Burlington LLP. Plaintiffs' counsel have done substantial work to identify and investigate potential claims in the action. Plaintiffs' counsel are experienced in and knowledgeable about class actions and other complex litigation, have extensive experience litigating class action lawsuits and other complex cases in federal court (including civil rights class action lawsuits on behalf of incarcerated and detained people), and have the necessary resources to represent the class.[77] DRC has extensive expertise in class action litigation and disability rights litigation, with particular expertise in litigation related to the rights of individuals with mental health disabilities who are subjected to conditions of confinement.[78] Covington & Burling LLP is one of the largest and most well-regarded law firms in the United States, and has participated in multiple cases in federal court related to detained individuals who are at high risk of becoming severely ill or dying from COVID-19.[79]

Plaintiffs and class counsel do not have any conflicts of interest with other class members and are well-equipped to protect the shared interests of the class. Thus, the adequacy of representation requirement of Rule 23(a)(4) is met.

**B.    The Proposed Class Meets the Requirements of Rule 23(b)(2).**

The proposed Class also qualifies for certification under Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class," such that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) "was adopted in order to permit the prosecution of civil rights actions." *Walters*, 145 F.3d at 1047. Rule 23(b)(2) is satisfied when class members

---

[77] Declaration of Aaron Fischer ("Fischer Decl."), ¶¶ 3, 6, 8; Declaration of Samantha Choe ("Choe Decl."), Decl. ¶ 5.
[78] Fischer Decl. ¶¶ 3, 5-10.
[79] Choe Decl. ¶ 4.

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE *EX PARTE* APPLICATION FOR
PROVISIONAL CLASS CERTIFICATION

"complain of a pattern or practice that is generally applicable to the class as a whole."
*Rodriguez*, 591 F.3d at 1125. As this Court has noted, "the critical inquiry is 'whether class members seek uniform relief from a practice applicable to all of them.'" *Ahlman*, 445 F.Supp.3d at 686 (citing *Rodriguez*, 591 F.3d at 1125).

The Class that Plaintiffs seek to certify fits squarely within Rule 23(b)(2)'s requirements. The members of the proposed Class all challenge the policies and practices and the conditions at DSH-Patton, which expose them to a heightened risk of contracting the virus. Moreover, all proposed Class members request the same relief – declaratory relief that the policies and practices and the conditions at DSH-Patton are unconstitutional under the Fourteenth Amendment and violate their statutory rights under the ADA; and an injunction to implement systemic changes to the policies and practices at DSH-Patton. *See Wal-Mart Stores*, 564 U.S. at 360 (holding that class certification is appropriate where a single injunction would provide relief to each class member.)[80]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court, concurrent or prior to issuance of an order on Plaintiffs' concurrently filed motion for a temporary restraining order to protect the health and lives of the putative Class: (a) provisionally

---

[80] The Ninth Circuit has no separate requirement that a class be "ascertainable." *Briseno v. ConAgra Foods*, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313 (2017); *see also* Civil Minutes - General, *Ahlman v. Barnes*, No. 20-00835, (C.D. Cal. May 26, 2020), ECF No. 65 at 7 ("While some circuits have adopted an 'ascertainability' prerequisite to certification, the Ninth Circuit has not."). Even if such a requirement were to apply, the proposed Class would easily satisfy this requirement. Defendants maintain records of the individuals confined at Patton. These records show who has medical and age-related risks. The proposed Class can therefore "be ascertained using objective criteria and identified through a search of Defendants' records concerning individuals in … custody." *Hernandez v. Lynch*, No. EDCV 16-00620, 2016 WL 7116611, at *14 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) (citation omitted).

certify the proposed Class composed of all people who are currently confined at DSH-Patton, or who will be confined in the future, during the COVID-19 pandemic and who are, or might be, at risk of becoming severely ill or dying from complications related to COVID-19 according to the CDC guidelines; (b) certify Plaintiffs Longstreet, Gluck, Hernandez and Waldrop as Class Representatives; and (c) appoint their counsel of record as Class Counsel.

Following provisional class certification, Plaintiffs request that the Court issue a final order on class certification at the earliest appropriate time thereafter.

DATED: December 14, 2020          Respectfully submitted,

By:  */s/ Anne Hadreas*
JENNIFER STARK (SBN: 267062)
Jennifer.Stark@disabilityrightsca.org
AARON FISCHER (SBN: 247391)
Aaron.Fischer@disabilityrightsca.org
ANNE HADREAS (SBN: 253377)
Anne.Hadreas@disabilityrightsca.org
SARAH GREGORY (SBN: 303973)
Sarah.Gregory@disabilityrightsca.org
KIM PEDERSON (SBN: 234785)
Kim.Pederson@disabilityrightsca.org
**Disability Rights California**
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200


By:  */s/ Samantha Choe*
SAMANTHA CHOE (SBN: 252002)
schoe@cov.com
ADDISON THOMPSON* (SBN: 330251)
athompson@cov.com
SYLVIA HUANG (SBN: 313358)
syhuang@cov.com
ANNIE SHI (SBN: 327381)
ashi@cov.com

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Covington & Burling LLP**
415 Mission St., Ste. 5400
San Francisco, CA 94105
Telephone: (415) 591-6000

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE *EX PARTE* APPLICATION FOR
PROVISIONAL CLASS CERTIFICATION